George **CORDOVA**,
Petitioner–Appellant,

v.

James A. **LYNAUGH**, Director, Texas
Department of Corrections,
Respondent–Appellee.

No. 87–5547.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1988.

mand with directions to conditionally grant the writ.

## I.

Jose (Joey) Hernandez and Cynthia West in the early morning hours of August 4, 1979 "parked" in a small parking lot in Espada Park in San Antonio, Texas. As Hernandez and West talked in the car, George Cordova approached and asked for oil. Hernandez replied that he did not have any and Cordova left. At around 2 a.m., Cordova returned with Manuel Villanueva and two other men.

When Hernandez reached to start the car, he was struck in the face by one of the men. The car door was opened and Cordova and Villanueva started beating Hernandez. West saw Cordova strike Hernandez with a tire iron and Villanueva attack him with a knife. Cordova took West's wrist and forced her to run into a wooded area of the park. Along the way, Cordova threatened to do to her what he did to Hernandez. West was then forced to the ground face down and Cordova stuck the tire iron next to her face and again threatened her. Cordova made West stand up and run further into the woods, where he undressed her, taking her watch and a necklace. She was raped by Cordova, Villanueva, and a third man. After the attackers departed, West dressed and ran back to the parking lot. There, she discovered that the car was gone and Hernandez was lying dead in a pool of blood.

When Villanueva was arrested shortly after the crime, he had a bloodied knife in his possession. Leon Springs testified that Villanueva returned home on August 4 with a bloody shirt. Springs turned over to police some 8–track tapes which belonged to Hernandez, together with Hernandez's watch and empty wallet. Springs testified that Villanueva had given him the property. Two cassette boxes, identified as belonging to Hernandez, were recovered from Villanueva's sister who had received them from Villanueva. West's watch was also recovered from Villanueva's house. Hernandez's car was discovered on a street about 2½ blocks from Villanueva's house,

Donald F. Killingsworth, Nicholas & Barrera, Inc., San Antonio, Tex. (Court-appointed), for petitioner-appellant.

Robert S. Walt, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, GARWOOD and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

George Cordova, sentenced to death by a Texas court for the murder-robbery of Joey Hernandez, appeals the denial of the writ of habeas corpus. Our examination of the record reveals that the state trial court violated Cordova's due process rights by failing to instruct on the lesser included offense of murder. We reverse and re-

and approximately the same distance from the house where Cordova lived.

Cordova was indicted for capital murder. Specifically, he was charged with intentionally causing the death of Hernandez by stabbing him with a knife while in the course of committing and attempting to commit a robbery of Hernandez. Tex.Penal Code Ann. § 19.03(a)(2) (Vernon 1974).

The testimony at trial consisted mainly of West's account, as related above, of the events of August 4. She positively identified Cordova and Villanueva. Other testimony established where the car and other property was found. Besides West's identification, the only other evidence connecting Cordova to the criminal activity was Leon Springs' testimony that he was at the Villanueva house on the evening of August 3 when he saw Cordova come and pick up Villanueva and Villanueva's sister's testimony that she saw Cordova with Villanueva on August 6. There was no physical evidence linking Cordova to the crime and no stolen property was found on Cordova or in his house.

The medical evidence introduced showed that Hernandez had wounds on his face that could have been caused by a tire iron. However, the cause of death was a stab wound to the back of the neck.

After the close of the evidence, Cordova's counsel objected to the failure to include an instruction on the lesser included offense of murder. The trial court overruled the objection.

The jury found Cordova guilty of capital murder. After presentation of evidence at the punishment stage, the jury answered "yes" to both special issues submitted to it. *See* Tex.Crim.Proc.Code Ann. art. 37.071(b) (Vernon 1981 & Supp.1987). Cordova was then sentenced to death. Tex.Crim.Proc. Code Ann. art. 37.071(c)-(e).

The Texas Court of Criminal Appeals affirmed Cordova's conviction and sentence. *Cordova v. State*, 698 S.W.2d 107, 110–11 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). In addressing Cordova's claim that the trial court erred in refusing to instruct on the lesser included offense, the court stated:

> In determining whether a defendant is entitled to a charge on a lesser included offense we will consider all the evidence presented at trial. [In doing so], this Court [applies a] two-prong test.... The first prong requires that the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.
>
> The defendant did not testify nor did he offer any testimony which might reasonably raise any lesser included offenses. The fact that the State in proving capital murder may also have proved a lesser offense does not entitle a defendant to a charge on the lesser offense. There is no evidence in the record that the appellant was guilty of only a lesser included offense.

*Id.* at 113 (citations omitted).

After exhausting his state court remedies, Cordova brought a habeas action raising a number of issues. The district court denied relief and Cordova appeals. We need only address the issue of failure to instruct on the lesser included offense of murder.[1]

## II.

### A.

In *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980), the Supreme Court invalidated, on due process grounds, a provision of the Alabama death penalty statute that precluded the jury from being instructed on a lesser in-

---

1. Our order of retrial moots all of Cordova's other claims except for his claim that the evidence was insufficient to show that the murder was during the course of robbery. A finding of insufficiency of the evidence would implicate double jeopardy concerns. *See, e.g., United*

States v. Sneed, 705 F.2d 745, 747–49 (5th Cir. 1983). However, as our discussion on the lesser included offense makes clear, *see infra* § II(C), the evidence was sufficient to prove that the murder was in the course of a robbery of Hernandez.

cluded noncapital offense. As explained in *Hopper v. Evans,* 456 U.S. 605, 610, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982), *Beck* stands for the proposition that "the jury [in a capital case] must be permitted to consider a verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.' " Although *Beck,* strictly speaking, "holds only that a state cannot impose a blanket ban on the giving of lesser-included-offense instructions in a capital case," *Reddix v. Thigpen,* 805 F.2d 506, 511 (5th Cir.1986), we have consistently held that *Beck*'s holding applies when the state trial court refuses a lesser included offense instruction. *See Reddix,* 805 F.2d at 511–12 (applying *Beck* but finding no violation because evidence did not support lesser included offense); *Bell v. Watkins,* 692 F.2d 999, 1004–05 (5th Cir.1982), *cert. denied,* 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983) (same).[2]

■ The federal standard "is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' " *Hopper,* 456 U.S. at 612, 102 S.Ct. at 2053 (quoting *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)). As the Supreme Court noted, the states have varied "in their descriptions of the quantum of proof necessary to give rise to a right to a lesser included instruction...." *Beck,* 447 U.S. at 636 n. 12, 100 S.Ct. at 2389 n. 12. Without denigrating any state's standard, including Texas',[3] we conclude that the federal standard—a lesser included instruction must be given when a jury could rationally

convict of the lesser offense and acquit on the greater offense—is equivalent to the *Beck* standard that a lesser included instruction must be given when the evidence would have supported such a verdict. In other words, due process and the Eighth Amendment require that, in a capital case, the jury must be allowed to consider a lesser included noncapital offense if the jury could rationally acquit on the capital crime and convict for the noncapital crime.

That we equate the federal standard with the *Beck* requirement is not momentous. Both *Beck* and *Hopper* talk of the federal standard and, at least impliedly, adopt it. *See Beck,* 447 U.S. at 635–37, 100 S.Ct. at 2388–89; *Hopper,* 456 U.S. at 611–12; 102 S.Ct. at 2053. Similarly, our cases have also used the federal standard in the *Beck* situation. *Bell,* 692 F.2d at 1004–05; *Reddix,* 805 F.2d at 512. *Beck* rested on the proposition that when "the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction." 447 U.S. at 637, 100 S.Ct. at 2389. The federal standard, by looking at what a rational juror could do, given the evidence, directly addresses that risk. Finally, the attorney for Texas conceded at oral argument that the federal standard was proper in the *Beck* situation.

The issue here is whether a rational juror, given all the facts, could have acquitted Cordova of capital murder and convicted him of a lesser included offense. An

---

**2.** A plain reading of *Beck* and *Hopper* inexorably leads to the same conclusion. If due process is violated because a jury cannot consider a lesser included offense that the "evidence would have supported," *Beck,* 447 U.S. at 627, 100 S.Ct. at 2384, the source of that refusal, whether by operation of state law or refusal by the state trial court judge, is immaterial.

**3.** As explained in *Cordova,* 698 S.W.2d at 113, Texas courts apply a two prong test for lesser included offenses. The first prong, "that the lesser included offense must be included within the proof necessary to establish the offense

charged," is, apparently, nothing more than a requirement that the lesser included offense really be a lesser included offense. The second prong that "there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense," seems very similar to the federal standard.

However, we are not concerned about the Texas standard or its possible misapplication to the facts here. Instead, we only address the issue of whether due process required that Cordova's jury be given a lesser included instruction.

understanding of the laws of Texas is necessary to answer that issue.

## B.

Cordova was indicted for, and convicted of, capital murder. Specifically, the indictment charged that Cordova murdered Hernandez during the course of robbery of Hernandez. The capital murder statute in Texas, Tex.Penal Code Ann. § 19.03 (Vernon 1974) provides, in pertinent part:

(a) a person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

. . . . .

(2) the person intentionally commits the murder in the course of committing or attempting to commit ... robbery....[4]

Section 19.02(a)(1) of the Texas Penal Code, defines murder: "A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual."

That the murder must have been committed "in the course of committing ... robbery," § 19.03(a)(2), means that the conduct causing the death occurred "in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of [the] ... robbery," *Fierro v. State*, 706 S.W.2d 310, 313 (Tex.Crim.App. 1986) (quoting *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Crim.App.1980)). If a robbery is committed as an "afterthought" and unrelated to the murder, it is simple murder and not capital murder. *O'Pry v. State*, 642 S.W.2d 748, 762 (Tex.Crim.App. 1982). In other words, as charged by the indictment, the state had to prove that Cordova intentionally[5] caused the death of Hernandez, in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of robbery of Hernandez.

The law of parties applies to the guilt phase of a capital murder trial. *Cordova*, 698 S.W.2d at 111; *English v. State*, 592 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed. 2d 120 (1980); *see* Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974) (law of parties). The Texas Court of Criminal Appeals explained the law of parties in *Cordova*, 698 S.W.2d at 111 (citations omitted):

> The statute was later amended to change "aggravated rape" to "aggravated sexual assault" in subsection (a)(2) and to add to section (a):
>
> (6) the person murders more than one person:
>
> (A) during the same criminal transaction; or
>
> (B) during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct.
>
> Tex.Penal Code Ann. § 19.03 (Vernon Supp. 1988).

We note that the indictment did not charge Cordova with the murder of Hernandez during the course of aggravated rape or robbery of West. Instead, the only allegation that made the murder capital was the robbery of Hernandez.

---

**4.** The statute, at the time of Cordova's crime, read in full:

(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman;

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated rape, or arson;

(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;

(4) the person commits the murder while escaping or attempting to escape from a penal institution; or

(5) the person, while incarcerated in a penal institution, murders another who is employed in the operation of the penal institution.

(b) An offense under this section is a capital felony.

(c) If the jury does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or of any other lesser included offense.

Tex.Penal Code Ann. § 19.03 (Vernon 1974).

**5.** Although murder is defined in Tex.Penal Code Ann. § 19.02(a)(1) as "knowingly or intentionally" causing the death, § 19.03(a)(2) specifies that the murder must be intentional in these circumstances. Intentional is the requisite mental state; murder committed knowingly during the course of robbery is not capital murder under § 19.03(a)(2). *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex.Crim.App.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987).

Evidence is sufficient to convict the defendant under the law of parties where he is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement. The agreement, if any, must be before or contemporaneous with the criminal event. To convict someone as a party to an offense, the evidence must show that at the time of the offense the parties were acting together, each doing some part of the execution of the common purpose. In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.

As the Court of Criminal Appeals has stressed, the agreement must be prior to the act. *See Randolph v. State*, 656 S.W. 2d 475, 477 (Tex.Crim.App.1983) (subsequent agreement to fabricate a story with no evidence of prior agreement was insufficient for murder conviction).

Finally, we conclude with relevant Texas law by noting that murder is a lesser included offense of capital murder. *See* Tex. Penal Code Ann. § 19.03(c) (If the jury does not find the defendant guilty of capital murder, it may convict him "of murder or any other lesser included offense.").

### C.

■ In order to prove capital murder, the state had to show that Cordova intentionally murdered Hernandez, either personally or as a party, while in the course of robbing Hernandez, either personally or as a party. The specific issue is whether a rational jury could have found that Cordova murdered Hernandez but that it was not in the course of the robbery. If so, the trial court violated due process by not instructing on the lesser included offense of murder.

6. *See supra* n. 1.

7. Hernandez's car was found equi-distant between Cordova's and Villaneuva's houses in a

A brief review of the evidence shows that Cordova and Villanueva approached and attacked Hernandez. Cordova then took West off into the woods where he raped her. Cordova went off while two other men raped West. He then returned and everybody left. West's own testimony proved that Cordova participated in her rape and the murder of Hernandez. The proof of Cordova's participation in the robbery of Hernandez is only circumstantial and far from certain. Hernandez was definitely robbed: his car was found abandoned and his watch and wallet and other items were given to police by people who said Villanueva gave the items to them. But the sequence of events tends to show that Cordova did not personally commit the robbery of Hernandez. Cordova was with West most of the time. West testified that when he left her, Cordova went in the direction of the cars on the dirt road. She did not testify that he went in the direction of the parking lot where Hernandez lay.

The state contends that Cordova is guilty as a party. They point to him as the leader of the gang, since he did the talking, and the fact that he robbed West. The state concludes that this shows he had a prior agreement to rob Hernandez. We agree that the jury could infer that Cordova had a prior agreement to rob Hernandez.[6] The problem is that the jury could reject that inference. Given the lack of evidence of Cordova's personal participation in the robbery, as well as the fact that none of the stolen items were traced to Cordova,[7] a rational jury could conclude that Cordova did not have a prior agreement to rob Hernandez.

The state points to the fact that Cordova robbed West to show his larcenous intent. The state also argues that the evidence is conclusive on the robbery because there is no other reason to attack Hernandez. We disagree. The fact that Cordova robbed West simply does not establish conclusively that he had the same intent to rob Hernandez. Indeed, Cordova let West keep her

heavily residential area. That evidence does not necessarily prove that Cordova stole it.

high school ring, indicating that he was not all that interested in robbery. As for the purpose of the attack, Cordova seemed most interested in raping West. It is at least arguable that his purpose throughout was to rape West, not to rob Hernandez.

Given all of the evidence, especially Cordova's lack of personal participation in the robbery of Hernandez and the fact that no stolen property was traced to him, we conclude that a rational jury could have concluded that Cordova had no "prior agreement or common purpose," *Cordova*, 698 S.W.2d at 112, to rob Hernandez. It could then have acquitted Cordova of capital murder, and found him guilty of murder. Since the trial court refused to instruct on the lesser included offense of murder, and the "evidence would have supported such a verdict," Cordova's due process rights were violated. *Hopper*, 456 U.S. at 610, 102 S.Ct. at 2052.

To recapitulate, the evidence would support the jury in finding either that Cordova planned the robbery of Hernandez or that he did not so plan. The proof of Cordova's agreement to rob Hernandez, unlike the proof of his intent to kill Hernandez, was circumstantial and ambiguous. If properly instructed, therefore, the jury could have found Cordova guilty of either simple murder or capital murder. Without the instruction on the lesser included offense of murder, the choice given to the jury in this trial was between conviction for capital murder and acquittal. The pressure to avoid acquitting so reprehensible an actor, driving the jury toward conviction for (robbery) capital murder, registers the due process and Eighth Amendment violations.[8]

### III.

The judgment of the trial court denying the writ is reversed. We remand and instruct the trial court to grant the writ conditioned upon the retrial of Cordova by the State of Texas.

REVERSED and REMANDED.

---

8. We note that the type of constitutional error here can never be harmless. *See Hopper*, 456 U.S. at 610, 102 S.Ct. at 2052 (Jury in capital case "must be permitted to consider a verdict of guilt of a noncapital offense 'in *every* case' in which 'the evidence would have supported such a verdict.'") (emphasis added). By the very nature of the error, that the jury could have rationally convicted of a less than capital offense but was not allowed to consider the offense by the jury instructions, precludes any harmless error analysis.

The nature of the initial inquiry itself is very similar to a harmless error analysis. If the instruction was refused, but the jury could not rationally convict on the lesser offense, then the alleged error would be harmless. In other words, the harm is subsumed in the test itself.