**Donald Ray GRAHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–94–226 CR.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 15, 1996.

Decided July 23, 1997.

Bruce N. Smith, Beaumont, for appellant.

Tom Maness, Criminal District Attorney, David W. Barlow, Assistant Criminal District Attorney, Beaumont, for Appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Indicted by a Jefferson County grand jury for the offense of attempted murder, appellant Donald Graham pleaded not guilty. A jury convicted Graham and sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals from the judgment and sentence below.

On August 12, 1992, while responding to a "shots fired/fight call," Officer Carona saw a white El Camino leaving "the area of the call" at a high rate of speed. The officer stopped the El Camino from which four or five people exited; he performed a *Terry* search and found a 410 shotgun shell (live round) in Donald Graham's pocket. Officer Carona also discovered a 410 gauge shotgun behind the El Camino's seat. Graham was initially stopped on Gulfway Drive in Port Arthur, four blocks from the fight/shooting incident on 15th Street to which Officer Carona was responding. In the presence of Officers Carona and Blanton, appellant responded to the taunting crowd that had gathered, "Yeah, I shot them. I wish I would have killed them." As revealed by later testimony, the reference in appellant's comment was to persons involved in a fight on 15th Street between Roy Snowden, appellant's brother, and a group that included the complainant, Michael Alexander. According to Officer LeBoeuf, two persons, Michael Alexander and Derrick Cross, "had been shot by shotgun pellets" in the 900 block of East 15th Street. After the officers arrested and performed the *Terry* search on appellant, they put him in the patrol car and took him to the scene of the altercation.

In his account of the incident, Roshane Taylor, a passenger in the El Camino, testified Graham became aware that his (Graham's) brother, Roy Snowden, had been involved in a fight. In an angry state, appellant drove to Mobile and 15th Streets, stopped his vehicle, jumped out, got his shotgun, and fired two times in the air. According to Taylor, Graham then moved forward "[t]owards where the crowd was." Taylor then testified as follows:

Q [State] Okay. So, he fired these two shots. Where did he fire them towards?

A [Taylor] Towards down the street, in the middle of the street.

Q And what was in the middle of the street?

A A crowd of people.

Q So, he fired into the middle of the street where a crowd of people were.

A The same guys who jumped on his brother.

Q And you're referring to Derrick Cross, Michael Alexander, Paul Alpough. Are you referring to those individuals?

A Yes, sir, I am.

After shooting twice in the air and twice towards the group of men, appellant then shot and hit a car. Before appellant left the scene, he fired one more shot into the air.

Taylor further testified he told Graham to "shoot them" [the guys who "had gotten into it" with appellant's brother], but he "never told him [Graham] to kill none of them." According to Taylor, Roy Snowden was being attacked by several guys who had sticks, bricks, and bats. Taylor stated it was at that point he told Graham to "shoot those guys," because it was necessary to protect Graham's brother. Taylor said he heard Graham say he (Graham) was going to kill one of the guys who beat up Snowden. As a result of his involvement in the incident, Roshane Taylor was convicted of attempted murder.

While testifying at trial, appellant related similar facts about his arrival on the scene, as well as the fact that he shot his gun in the air to scare the "crowd" (attackers) away. Since the attackers continued to throw objects at his brother, Graham declared he next shot toward them in an attempt to scare them into the house. According to Graham's testimony, he did not think he could hit anyone because of the distance between their location and his; neither did he intend to hurt or kill anyone when he fired his weapon. As did Roshane Taylor, appellant testified Taylor told him to shoot at the crowd. Graham did precisely that. He stated he shot the gun in order to "stop everything" and to protect his brother.

On appeal, appellant urges three points of error. The first two points concern alleged error in the court's charge, and point of error three contends the evidence is insufficient to support a finding that appellant had the intent to kill Michael Alexander.

We first consider the insufficiency of evidence point. When an appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether the evidence adduced at trial was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). *Accord Geesa v. State*, 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991).

If an appellate court determines the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to a factual sufficiency review. *See Clewis*, 922 S.W.2d at 128. In conducting a factual sufficiency review, this Court must view all the evidence impartially and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed.)

In the instant case, appellant was charged with attempted murder. A person commits the offense of attempted murder if, with the specific intent to cause the death of an individual, the person does an act amounting to more than mere preparation, but fails to effect the death of an individual. *See Fuller v. State*, 716 S.W.2d 721, 723 (Tex.App.-Corpus Christi 1986, pet. ref'd); TEX. PEN.CODE ANN. § 15.01(a) (Vernon 1974 & Vernon Supp.1992);[1] TEX. PEN.CODE ANN. § 19.02(a)(1) (Vernon 1989). Appellant's complaint is that the evidence was insufficient to support a finding of an intent to kill.

A specific intent to kill is a necessary element of attempted murder. *See Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim.App.1982) (opinion on motion for rehearing); *see also Fuller*, 716 S.W.2d at 723. The intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *See Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *see also Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex.Crim.App.1986). A shotgun is a deadly weapon unless in the manner of its use it is shown to be otherwise. *See* TEX. PEN.CODE ANN. § 1.07(a)(11) (Vernon 1974); *see also Ex parte Franklin*, 757 S.W.2d 778, 782–83 (Tex.Crim.App.1988); *Lerma v. State*, 679 S.W.2d 488, 493 (Tex. Crim.App.1982).

The record reveals that appellant, after he saw a group beating on his brother with bats, went home to get his shotgun and then returned to the scene of the fight. Although appellant testified he initially fired the 410 gauge shotgun twice into the air, he also testified he then fired the gun at the crowd in order to protect his brother. Roshane Taylor testified appellant was mad when appellant told Taylor to come with him and when they got in appellant's El Camino to drive over to 15th Street, the scene of the altercation. As noted previously, Taylor also testified Graham told him he (Graham) was going to kill one of the guys that had beaten up his brother. Taylor further declared he told Graham to shoot them (the ones beating up on Graham's brother), which Graham proceeded to do. Although appellant declared at trial he did not intend to kill anyone when he fired the gun at the crowd, we conclude a rational trier of fact could have found specific intent to kill based on the testimony of Taylor and appellant and on appellant's deliberate pointing and firing of the gun at the crowd.

1. All citations to the Texas Penal Code are to statutes in effect on the date of the offense,

August 12, 1992.

■ It is axiomatic that the witnesses' credibility and the weight to be given their testimony are within the jury's province. The jury may accept or reject all or any part of a witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421–23 (Tex.Crim.App. 1992). The jury may infer an intent to kill from any facts in evidence which, to their minds, prove the existence of an intent to kill. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found appellant's actions evidenced his intent to kill and, moreover, found the essential elements of the crime beyond a reasonable doubt.

■ Having determined the evidence was legally sufficient, we then examine all of the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis*, 922 S.W.2d at 135. Having reviewed the evidence as set out above, we conclude that the verdict is not factually insufficient under the *Clewis* standard. Point of error three is overruled.

■ In point of error one, appellant complains the trial court erred in denying his requested jury instruction on the lesser included offense of reckless conduct. The indicted offense was attempted murder. The charge included instructions on the lesser included offenses of aggravated assault and assault, but not on reckless conduct. Whether a charge on a lesser included offense is required is determined by a two-pronged test. First, we must determine whether the offense, i.e., reckless conduct, constitutes a lesser included offense; second, the lesser included offense must be raised by the evidence at trial. In other words, there must be some evidence which would permit a rational jury to find that, if guilty, the defendant is guilty only of the lesser offense. *See Schweinle v. State*, 915 S.W.2d 17, 18 (Tex. Crim.App.1996); *see also Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied.*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The first prong of the test is met; reckless conduct is a lesser included offense of attempted murder. *See*

*Godsey*, 719 S.W.2d at 584; *see* TEX. PEN. CODE ANN. §§ 15.02 (Vernon 1974), 19.02, 22.05 (Vernon 1989).

■ In considering the second prong of the test, we have reviewed the record to ascertain if there is some evidence that would permit a rational jury to find the appellant is guilty only of reckless conduct. Anything more than a scintilla of evidence from any source is sufficient to entitle a defendant to submission of the issue. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994). A lesser included offense may be raised if evidence either (a) affirmatively refutes or negates an element establishing the greater offense, or (b) the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater offense. *See Schweinle*, 915 S.W.2d at 19 (citing *Saunders v. State*, 840 S.W.2d 390 (Tex.Crim. App.1992)). In making this determination, we must review all the evidence presented at trial. *See Bignall*, 887 S.W.2d at 23. As explained in *Bignall*, a jury, as trier of fact, is entitled to believe all or part of the conflicting testimony proffered and introduced by either side. *See Bignall*, 887 S.W.2d at 24 (citing *Bell v. State*, 693 S.W.2d 434, 443 (Tex.Crim.App.1985)). Furthermore, a jury can selectively believe all or part of the evidence admitted at trial. *Id.* However, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. There must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Id.*

A person commits the offense of reckless conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. The definition of "recklessly" entails an actor being aware of, but consciously disregarding, a substantial and unjustifiable risk that a result will occur. The applicable statute on reckless conduct is as follows:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

(c) An offense under this section is a Class B misdemeanor.

TEX. PEN.CODE ANN. § 22.05 (Vernon 1989).

■ In order for appellant to be convicted of attempted murder, the State must prove a higher mental culpable state than that required for reckless conduct; the State must prove he intentionally or knowingly intended to cause the death of the complainant. *See Gentry v. State*, 881 S.W.2d 35, 40 (Tex. App.—Dallas 1994, pet. ref'd); TEX. PEN. CODE ANN. §§ 15.01(a), 19.02(a)(1).

There is no question that Graham knowingly pointed a firearm at or in the direction of another. He admits he did so, and others testified likewise. Therefore, under the statute, recklessness and danger are presumed. The issue is whether there is some evidence, more than a scintilla, that appellant was guilty only of reckless conduct.

■ We believe not. Appellant's strategy at trial was to justify his conduct by relying on his testimony that he fired at the group because he had to protect his brother. However, the consequences of appellant's intentional act of shooting at the "crowd," which resulted in the wounding of Alexander, went well beyond the mere act of placing another in imminent danger of serious bodily injury. *See Johnson v. State*, 915 S.W.2d 653, 659 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Once Graham discharged his gun and shot Alexander, the complainant was no longer merely in imminent danger of serious bodily injury. Alexander, in fact, sustained the wound which gave rise to indictment for attempted murder.

Appellant never contended his discharge of the gun was accidental or merely reckless. He admitted he deliberately pointed and fired the gun at the group. *See Gilmore v. State*, 871 S.W.2d 848, 852 (Tex.App.—Houston [14th Dist.] 1994, no pet.)(Since defendant aimed at the complainant when defendant fired the gun, the act was intentional, not reckless, and no instruction on reckless

conduct was necessary.) Moreover, appellant was aware the gun was a deadly weapon, since he testified the 410 shotgun can kill. As noted previously in this opinion, a specific intent to kill may be inferred from Graham's use of a deadly weapon unless in the manner of its use it is reasonably apparent that death or serious bodily injury would not result. *See Godsey*, 719 S.W.2d at 580–81; *see also Burnett v. State*, 865 S.W.2d 223, 230–31 (Tex.App.—San Antonio 1993, pet. ref'd). There is no evidence in the record to rebut the inference.

■ Furthermore, appellant's testimony is not descriptive of thought or conduct that would allow a charge on reckless conduct. In response to defense counsel's question as to whether he thought he could hit anyone because of the distance he was away from the crowd, he replied: "No, sir, that's why I stayed as far back as I could." If he had wanted to hurt someone, appellant stated, "I could have ran upon them" and fired. His testimony does not support a reckless mental state, as defined by TEX. PEN.CODE ANN. § 6.03(c) (Vernon 1994):

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct *when he is aware of but consciously disregards* a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. (emphasis added)

To fall within the confines of the culpable mental state of recklessness, appellant must produce some evidence that he was aware of the risk of killing or hitting someone. Since his testimony is to the contrary—namely that there was no risk of hitting anyone, appellant's conduct could not have fallen within the definition of "reckless."

We conclude appellant's statement that he did not intend to kill cannot be plucked out of the record and examined in a vacuum. *See Burnett*, 865 S.W.2d at 230. Appellant's ac-

tions progressed step by step from the initial firing into the air to the deliberate firing at the "crowd." Even based on Graham's testimony alone, the evidence established he intentionally fired into the crowd ostensibly to protect his brother. We find that appellant's after-the-fact claim of no intent to kill raises an issue as to his culpable mental state only if it is taken alone and out of context. There is no affirmative evidence raising the issue of reckless conduct; nor is the evidence subject to differing interpretations. Indeed, appellant's intentional conduct went well beyond that of the reckless conduct of Section 22.05.[2] The evidence does not support a rational inference by a jury that appellant was guilty only of reckless conduct. Consequently, appellant is not entitled to a jury instruction on reckless conduct. Point of error one is overruled.

In point of error two appellant contends the trial court erred in denying his requested instruction of recklessness to be included in the definition of the lesser included offense of aggravated assault. The purpose of including a definition of a word or term in the charge, of course, is to assist the jury in making its finding during the guilt-innocence phase and in determining the penalty, if any to be assessed. *See Levy v. State*, 860 S.W.2d 211, 213 (Tex.App.—Texarkana 1993, pet. ref'd). The charge included definitions of the culpable mental states of "intentionally" and "knowingly," but not of "recklessness." We conclude the trial court did not err in its refusal to include the definition of "recklessness" in the context for which appellant requested it.

As noted in our discussion of appellant's point of error one, the trial court did not err in refusing appellant's requested charge on the lesser included offense of reckless conduct, because that particular theory was not raised by the evidence and did not meet the test in *Rousseau*. The court did include instructions on the lesser included offenses of aggravated assault and assault. However, the fact that a defendant is entitled

to a charge on a lesser offense, in this instance, aggravated assault, does not necessarily grant entitlement to a submission of all the various theories by which that lesser offense may be committed. *See Sanford v. State*, 634 S.W.2d 850, 852–53 (Tex.Crim.App. 1982). "If the evidence does not raise a reckless assault under Sec. 22.01, it was not error to charge only on an intentional and knowing assault under Sec. 22.01." *Id.* Consistent with our discussion in point of error one, we note that appellant's own testimony, not to mention the testimony of all the other witnesses, fails to raise an issue on whether he recklessly caused bodily injury under Sec. 22.01, as that culpable mental state is defined in TEX. PEN.CODE ANN. § 6.03(c) (Vernon 1974).

Even had the trial court erred in its refusal to include the requested definition in its charge, it was harmless. *See Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984); *see* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). The Court of Criminal Appeals has held that in the context of a defect in a lesser included offense instruction, conviction for the greater inclusive offense nullifies any possible harm that might be derived from the defective lesser included offense instruction. *See Saunders v. State*, 913 S.W.2d 564, 569–70 (Tex.Crim.App.1995). Point of error two is overruled.

The judgment and sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. But for the "right ruling, wrong reason" rule, this would be a simple case. The charge conference reflects:

> The Court: Let the record reflect that defense counsel has requested the Court place in the charge in the area of aggravated assault the definition of reckless, and that has been denied. And also, defense counsel has requested a lesser

---

2. One court has held that TEX. PEN.CODE ANN. § 22.05 covers that intent which falls *short of harming another:* that is, although *no physical harm* results, the acts are highly dangerous. *See*

*Mares v. State*, 903 S.W.2d 419, 422 (Tex.App.— Eastland 1995, pet. ref'd). Thus, if injury results from the actor's conduct, the act constitutes more than reckless conduct.

included offense of reckless conduct; and that's also denied.

. . . .

[Counsel]: I additionally requested that under the definition of assault that the— that it read a person commits the offense of assault if he intentionally, knowingly or recklessly causes bodily injury to another, as opposed to the way it reads, a person commits the offense of assault if her intentionally or knowingly causes bodily injury leaving out the word recklessly.

On, theory, Judge, if I may be heard on why we're requesting reckless conduct, the defense evidence shows that a man pointing a gun in the direction of a crowd of people with the intent to scare them as opposed to the intent to harm someone in my judgment raises the issue of recklessness.

The Court: And I agree if it would not have been fired. But I don't think reckless conduct takes in the part where not only did he point, but he pointed and fired. That's my theory.

[Counsel]: But can we—as far as the definition of assault containing the word "reckless", is that denied?

The Court: Right. And also, the request for the lesser included offense of reckless conduct is denied.

Here the trial judge is specific and direct; he believes the pointing of a weapon is reckless conduct, but when the weapon is fired, recklessness no longer applies. Clearly, this is not the law. *See Hayes v. State,* 728 S.W.2d 804, 809–10 (Tex.Crim.App.1987)(accidental discharge of gun during struggle entitled defendant to reckless conduct charge); *Bell v. State,* 693 S.W.2d 434 (Tex.Crim.App.1985)(defendant firing four shots into an occupied trailer · home was entitled to reckless conduct charge); *Salinas v. State,* 644 S.W.2d 744, 746 (Tex.Crim.App.1983)(discharge of pistol with no intent to kill merited charge on involuntary manslaughter); *Johnson v. State,* 828 S.W.2d 511, 514–15 (Tex.App.—Waco 1992, pet. ref'd)(defendant firing at police officer entitled to third-degree aggravated assault charge, including recklessly, due to evidence of lack of intent to kill); *Mullins v. State,* 767 S.W.2d 166, 169–70 (Tex.App.—Houston [1st Dist.] 1988, no pet.)(defendant firing shot at victim should have been given reckless conduct charge); *Hernandez v. State,* 742 S.W.2d 841, 843 (Tex.App.—Corpus Christi 1987, no pet.)(defendant who fired "to scare" entitled to involuntary manslaughter charge).

Thus, his decision was based on the wrong reason. The "right ruling, wrong reason" rule has long been established[1] and widely used[2], but generally involving motions to suppress and evidentiary rulings. *See McDuff v. State,* 939 S.W.2d 607, 619 (Tex. Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, —— L.Ed.2d —— (1997); *Jones v. State,* 833 S.W.2d 118, 125 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Calloway v. State,* 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988); *Mutz v. State,* 862 S.W.2d 24, 28 (Tex.App.— Beaumont 1993, pet. ref'd). Apparently the rule is still viable and we are bound to follow it.[3] Thus a simple case becomes complex.

Now to the majority's analysis of whether the culpable mental state of recklessness was raised, and thus whether any lesser included offense based upon recklessness should have been given in the jury charge. Points of

---

1. *But see Rankin v. State,* No. 0374–94, 1996 WL 165014, —— S.W.2d —— (Tex.Crim.App. April 10, 1996)(dissenting opinion)(not yet released for publication) where Presiding Judge McCormick questions if the majority is changing the "a correct ruling given for the wrong reason should not result in a reversal" rule.

2. *But see Tamayo v. State,* 924 S.W.2d 213 (Tex. App.—Beaumont 1996, no pet.), where the court states "[o]rdinarily, if a court's judgment or decision is correct on any theory it is not error and will not be disturbed. We decline to use this "right ruling, but for the wrong reason" rule in this case." *Id.* at 215 (citation omitted).

3. It seems somewhat ironic that in these times when commentators, and society in general, are calling for a return to individual responsibility and accountability, that appellate courts may not rely upon a trial judge's stated reason for ruling, but must continue to find any reason the trial judge may have been correct.

error one and two both raise this issue but the majority presents the more detailed discussion under point of error one. Under this point, the majority says "[t]he issue is whether there is some evidence, more than a scintilla, that appellant was guilty only of reckless conduct" and then concludes, "[w]e believe not."[4] This incorrectly characterizes the second prong of the test enunciated in *Royster v. State*, 622 S.W.2d 442 (Tex.Crim. App.1981). In *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993), the court stated:

> In applying the second prong of the *Royster* test, the trial court's determination as to whether there is some evidence that raises an issue of a lesser included offense is distinct from the jury's ultimate determination as to whether the defendant is guilty only of the lesser offense and not of the greater offense. *See Lugo v. State*, 667 S.W.2d 144, 146 (Tex.Cr.App.1984). These separate considerations were delineated in *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Cr.App.1985):
>
>> If evidence from any source raises the issue of a lesser included offense, the charge must be given ... 'it is ... well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted.' (Citations omitted.) It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the lesser included offense. (Citations omitted.).
>
> Although we have long-recognized the importance of distinguishing between the roles of court and jury in the context of lesser included offenses, *Lugo*, 667 S.W.2d at 146 (quoting *Liskosski v. State*, 23 Tex. App. 165, 3 S.W. 696, 698 (Tex.Ct.App. 1887)), we have never explained the relationship between those roles and the application of the *Royster* test.

A comparison of the federal standard with the *Royster* standard is helpful in understanding the delineation between the roles of court and jury in applying *Royster*. The federal standard set forth in *Cordova* [*v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988) ] provides that

> a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'

*Cordova*, 838 F.2d at 767 (quoting *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)). Although the Fifth Circuit has noted that the *Royster* test "seems very similar" to the federal standard, *id.* at 767 n. 3, one prominent difference between the two is the reference in the federal standard to the rational findings of a jury. We think that by similarly tieing the "guilty only" language in the *Royster* test to the rational findings of a jury, the roles of court and jury will be better understood in applying *Royster*. It becomes apparent that the appropriate test to be applied in determining whether a defendant is entitled to a charge on a lesser included offense is the following:

> first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

(emphasis on portion added to *Royster* test). In applying the two-prong test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the greater offense.

*Accord Wolfe v. State*, 917 S.W.2d 270, 278 (Tex.Crim.App.1996). Thus, the majority's analysis begins on an incorrect thesis.[5]

---

4. Majority opinion at page 730.

5. I do acknowledge the majority, on page 729, states "[i]n considering the second prong of the

test, we have reviewed the record to ascertain if there is some evidence that would permit a ra-

The majority's belief is based on several grounds: Graham's trial strategy was justification,[6] i.e., protection of a third person, his brother, Roy Snowden;[7] there is no evidence to rebut the inference of intent to kill through the use of a deadly weapon;[8] Graham's testimony—that he did not think he could "hit" someone because of the distance—does not support a reckless mental state;[9] and Graham's statement that he did not intend to kill cannot be plucked out of the record and examined in a vacuum.[10]

Considering there was some evidence concerning protection of Graham's brother, the jury was properly charged on that issue. For the majority to conclude this was Graham's trial strategy is overreaching. Since there is no direct evidence as to trial strategy, the three most obvious ways to assess trial strategy are to review voir dire, testimony and jury argument. There was no mention, by either side, of protection of a third person during voir dire. The State called nine witnesses: Michael Alexander, the victim; Richard Powell, Alexander's father; Harold Manuel, a neighbor; Port Arthur Police Officers Robert Williamson, John Carona, Mark Blanton, J.T. Lebouef and Larry Nicholson; Roshane Taylor, a party to the offense; and, on rebuttal, Judge Barbara Dorman, Justice of the Peace, Precinct Eight, of Jefferson County. Of these, only Lieutenant Williamson and Taylor testified about Graham's defense of Snowden. Williamson's testimony on this issue was through the introduction of Graham's written statement which mentioned someone had told Graham his "brother's arms were all cut up" and Graham "got even more mad." Taylor testified Graham got upset because Snowden had been beaten up and he and Graham went to the scene where Graham fired two shots into the air, two shots towards the crowd, one shot at a car and a final shot into the air. Taylor testified he told Graham to shoot because he, Taylor, thought it was necessary to protect Snowden.

The defense called two witnesses, Snowden and Graham, but only Graham testified to acting to protect Snowden. Graham testified, in response to a question did he shoot because it was necessary to stop what was happening and to protect his brother, "Yes, sir." He testified he saw his brother hit with bats. On cross, Graham restated his intentions in returning to the scene were to shoot in the air and scare everyone away. Graham confirmed Taylor told him to shoot them because they had jumped on Snowden. Graham testified he believed deadly force was being used against Snowden The State attempted to clarify[11] whether Graham shot to protect Snowden through this exchange:

Q   The reason you shot towards the crowd, you're telling me and the jury, is that you thought your brother was in danger?

A   I was trying to stop everything. I was trying to make them go into the house because it seemed like they would not go in the house for nothing. . . .

  . . . .

Q   So, you're telling me and the jury that the reason you fired those shots in the crowd was to scare them, not to protect Roy Lee Snowden.

A   No, sir.

Q   So, which is it?

A   The reason why I shot—fired those shots, to scare them away into their house but leaving nobody hurt except for my brother and them. They could have been hurt as long as nobody would have got hurt or nothing. [sic]

Q   So, if I understand correctly, you weren't shooting to prevent somebody from hurting your brother.

---

tional jury to find the appellant is guilty only of reckless conduct."

6.   Majority opinion at page 730.

7.   *See* Tex. Pen.Code Ann. § 9.33 (Vernon 1994).

8.   Majority opinion at page 730.

9.   Majority opinion at page 730.

10.   Majority opinion at page 730.

11.   The State made a valiant effort, but clarity is not evident in this exchange.

A  I was shooting to make them go into the house, sir. That's the only way I felt they would have went in their house.

My review of this testimony indicates while Graham's counsel was certainly providing evidence of defense of a third person, this was not his trial strategy to the exclusion of attempting to negate specific intent to kill.

Graham's counsel, in jury argument, began by focusing on intent to kill. Defense of the brother was briefly mentioned, but in the context of how the incident began rather than as an excuse or justification. Immediately counsel returned to the issue of intent, assessing the evidence in light of that issue and addressing intent to cause bodily injury. Counsel then discussed the reckless nature of Graham's conduct, even to the point of telling the jury that if they felt Graham was reckless and that recklessness caused bodily injury, they would have to say not guilty whether they liked it or not. Counsel closed with this plea:

And of the evidence presented here, I submit to you that you cannot be certain of his intent to kill or even injure anyone. You can only be certain that, yes, from the evidence he was reckless in doing what he did and he was sorry for it and he is sorry for it. People got injured because of that, and that's what he should be punished for but not for these offenses here. And that's what I'm asking you.

Neither voir dire, testimony or jury argument reveal Graham's trial strategy as characterized by the majority. Even if the majority is correct, they have cited no cases where trial strategy is a factor in determining if a lesser mental state has been raised by the evidence, much less any cases holding that trial strategy of justification and a lesser mental state are, as a matter of law, mutually exclusive.

Next the majority concludes there is no evidence to rebut the inference of intent to kill through the use of a deadly weapon. What the majority must actually be saying is that the evidence rebutting the inference of intent to kill is either not credible or is no more than a scintilla. As to the propriety of the majority determining the credibility of evidence, "[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given." *Penry v. State,* 903 S.W.2d 715, 755 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995)(citing *Rousseau,* 855 S.W.2d at 672–73). *See also Bell,* 693 S.W.2d at 442.

While the Court of Criminal Appeals has used the "more than a scintilla" measure, it has not defined it. All recent references can be traced back to *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App.1994), where it was used without citation to any authority. In discussing when the issue of competency is raised, the court in *Sisco v. State,* 599 S.W.2d 607 (Tex.Crim.App.1980), said:

This statement of the "different method" for raising the issue suggests that the Legislature had eyed the civil law in framing the standard to govern the trial court in deciding whether to impanel a jury to determine incompetency. See Rule 279, T.R.C.P. and annotated cases. Deemed "fundamental" is the proposition that only issues raised by the evidence need be submitted to the jury, but that any probative evidence, "more than a scintilla," tending to support an issue is sufficient; further, that in determining whether the evidence raised the issue for submission, it must be viewed in the light most favorable to the party with the burden of securing the finding, disregarding contrary evidence and inferences.

*Id.* at 612 (footnotes omitted).

When turning to the civil law, "more than a scintilla" exists where the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (quoting *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994)). *See also Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 282 (Tex.1995); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Clearly, Graham's statements he did not intend to kill or injure anyone are, by themselves, more than a scintilla of evidence on the issue of intent.

Next the majority decides that Graham's testimony—he did not think he could "hit" someone because of the distance—does not support a reckless mental state.[12] They are quite correct in stating that Graham, to be entitled to a charge on recklessness, must produce some evidence he was aware of the risk of killing or hitting someone. However, they err in using conflicting testimony as proof. For all through this difficult analysis, it must be remembered that the test is whether evidence from any source, the State or the defendant, without regard of whether the evidence is strong, weak, unimpeached, or contradicted, raises a reckless mental state. *Rousseau*, 855 S.W.2d at 672–73.

In reviewing the evidence, Officer Leboeuf testified, based upon the shell casings, one shot was from 10 to 20 feet away, one shot was from 30 to 35 feet away, and at that distance the shell was capable of causing death or serious bodily injury. Mr. Powell testified the shots were fired from about "half a block away." Mr. Manuel testified he saw a blast from a shot 50 to 60 yards from Mr. Powell's house. All of this testimony is some evidence Graham was aware of the risk of killing or hitting someone.

In *Bell*, 693 S.W.2d at 442, the court discussed this issue:

> In the recent case of *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984), the defendant was convicted of murder and contended on appeal that the trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter. The court of appeals, applying the two-part test set forth in *Royster, supra*, held that the evidence did not raise the issue of a reckless killing and the trial court did not err in failing to instruct the jury on involuntary manslaughter. *Lugo v. State*, 653 S.W.2d 513 (Tex.App.—Corpus Christi 1983). The court of appeals held that since the defendant denied pointing the rifle at his victim, and testified that he believed the gun was unloaded, he negated any claim that he perceived the danger. Thus, the court of appeals held that

the defendant's testimony negated the mental state required to establish involuntary manslaughter.

We reversed the judgment of the court of appeals in *Lugo* and remanded the case for a new trial. We initially noted that the jury, as the trier of fact, may accept or reject all or a part of a witnesses' testimony, even the defendant's. Thus, we rejected the notion that a defendant's testimony can negate the issue of a lesser included offense and held that we will consider *all* the evidence presented at trial in order to determine whether an instruction on a lesser included offense should be given.

Applying the concepts of *Lugo* and *Bell* to the facts here, the jury, as trier of fact, could have reasonably rejected Graham's testimony that he did not think he could "hit" anyone with his shots; it was uncontradicted Graham fired the weapon at the victim and the victim was injured. The jury also could have reasonably believed Graham's testimony that he did not intend to injure or kill anyone. Accordingly, the jury could have reasonably concluded that Graham's firing the weapon at the victim in an attempt to scare him constituted a conscious disregard of a substantial and unjustifiable risk.

Lastly, the majority holds Graham's statement, he did not intend to kill, cannot be plucked out of the record and examined in a vacuum. They rely upon *Burnett v. State*, 865 S.W.2d 223, 230 (Tex.App.—San Antonio 1993, pet. ref'd), for this proposition. However, when reviewing *Burnett*, the San Antonio court makes the statement and cites *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App.1986). Looking at *Godsey*, the court did use the phrase "[t]he statement cannot be plucked out of the record and examined in a vacuum." However the *Burnett* opinion neglects to describe the statement as the *Godsey* court did:

> Appellant testified that he left his gun in his bedroom and walked into the hallway to go to the kitchen. He said he never went outside of the apartment, never pointed his gun at the police, never saw

---

12. Forget, for the moment, the majority, at page 730, states "[t]herefore, under the statute, reck-

lessness and danger are presumed."

any police officers the day of the offense, and did not intend to murder anyone. Appellant's testimony was that he did not commit any offense. It was in this context that he testified that he did not intend to kill any police officer. This is almost like saying, "I was not there so I could not intend to kill anyone." This testimony is similar to that of the defendant in *Wallace,[v. State,* 679 S.W.2d 1 (Tex.Cr.App. 1983) ], where, by his own testimony, the defendant was guilty of no offense at all. The Court of Appeals gave a meaning to appellant's statement that appellant did not. The statement cannot be plucked out of the record and examined in a vacuum. *Godsey*, 719 S.W.2d at 584.

Furthermore, a review of *Burnett* reveals a completely different situation than here. Burnett testified he thought the deceased was a burglar, he aimed a pistol at the deceased and fired through a screen door. *Burnett*, 865 S.W.2d at 226. He also testified he only intended to wound, not to kill. In this case Graham's written statement, given less than an hour after the incident, stated he shot into the air and did not intend to injure or kill. Officer Lebouef testified one of the shotgun shells was 7 1/2 shot, commonly referred to as "bird shot." This is an inference there was no intent to kill. Taylor testified Graham shot twice into the air before shooting down the street. These warning shots are an indication of no intent to kill. Graham's testimony he did not aim the gun, but just pointed it at the crowd, is a different inference of no intent to kill. *See Gilmore v. State*, 871 S.W.2d 848, 849–52 (Tex.App.— Houston [14th Dist.] 1994, no pet.)(aiming is intentional conduct). All of this is more than a scintilla of evidence raising the issue of a reckless mental state. Clearly the trial court erred in refusing to charge the jury on aggravated assault committed recklessly.

However, the majority seeks to cover all angles by declaring: [13]

Even had the trial court erred in its refusal to include the requested definition in its charge, it was harmless. *See Alman-*

za v. State, 686 S.W.2d 157 (Tex.Crim.App. 1984); *see* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). The Court of Criminal Appeals has held that in the context of a defect in a lesser included offense instruction, conviction for the greater inclusive offense nullifies any possible harm that might be derived from the defective lesser included offense instruction. *See Saunders v. State*, 913 S.W.2d 564, 569–70 (Tex.Crim.App.1995).

As both opinions agree, the "deep issue" [14] in this case is whether there is more than a scintilla of evidence to raise the mental state of recklessness. If there was, it was error for the trial court to refuse to charge the jury on that mental state. The majority says "NO," I say "YES." The remaining issue is whether that error is harmless. The Court of Criminal Appeals in *Saunders* stated:

[A]ppellant relies upon cases from this Court in which we have consistently found "some" harm in the failure of the trial court to charge on a lesser included offense simply by virtue of the fact that this error kept the jury from considering whether the defendant may have been guilty of that lesser offense. Appellant argues that this view of harm is consistent with the position taken by the United States Supreme Court in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Beck* the Supreme Court acknowledged the possibility that a jury, believing the defendant to have committed some crime, but given only the option to convict him of a greater offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt he really committed the greater offense. *Id.,* 447 U.S. at 634, 100 S.Ct. at 2388, 65 L.Ed.2d at 401.

It is true that, without specifically articulating this as the rationale, we have routinely found "some" harm, and therefore reversed, whenever the trial court has failed to submit a lesser included offense that was requested and raised by the evidence—at least where that failure left the

---

13. Majority opinion at page 731.

14. FLOWERS, B., GARNER, B., TRIMBLE, J., ADVANCED

JUDICIAL WRITING, LAWPROSE 15 (1995).

jury with the sole option either to convict the defendant of the greater offense or to acquit him. E.g., *Moreno v. State*, [702 S.W.2d 636, 641 (Tex.Crim.App.1986)]; *Gibson v. State*, 726 S.W.2d 129, 133 (Tex.Cr.App.1987); *Hayes v. State*, 728 S.W.2d 804, 810 (Tex.Cr.App.1987); *Mitchell v. State*, 807 S.W.2d 740, 742 (Tex.Cr.App. 1991). In each of these cases we essentially recognized that "some" harm occurs because the jury was not permitted to fulfill its role as factfinder to resolve the factual dispute whether the defendant committed the greater or lesser offense. That the evidence the defendant was "guilty only" of the lesser included offense may not have been compelling was no more a consideration in our analysis of harm than it was in deciding that the trial court erred in failing to give the instruction in the first place. Given the rationale of *Beck*, this is hardly an inappropriate criterion for assessing harm.

But in none of these cases did the trial court, as here, agree to submit one lesser included offense raised by the evidence, but decline to submit another that the evidence also raised. Here the jury's options were not limited to conviction of the greater offense or acquittal. Under these circumstances the *Beck* risk that the jury will convict of the greater offense despite its reasonable doubt is not so apparent. There is an available compromise. It is at least arguable that a jury that believed the defendant committed an uncharged lesser included offense, but unwilling to acquit him of all wrongdoing, and therefore inclined to compromise, would opt for a lesser included offense that *was* submitted rather than convict him of the greater offense. That the jury here did *not* may thus indicate that the sort of "harm" contemplated by *Beck* did not occur in this cause. For this reason we cannot quite so readily regard the harm in failing to submit the lesser included offense as self-evident, as we did in *Moreno, Gibson, Hayes* and *Mitchell,* and as the court of appeals did in *Gonzalez [v. State,* 733 S.W.2d 589 (Tex.App.—San Antonio 1987, pet. dism'd) ].

In short, we cannot say that the court of appeals clearly erred in this cause to push beyond the simple fact that the evidence raised the lesser included offense of negligent homicide in deciding whether failure to give that instruction amounted to "some" harm under the standard of *Almanza* [, 686 S.W.2d at 157,] and *Arline [v. State,* 721 S.W.2d 348 (Tex.Crim.App. 1986) ]. It was not inappropriate—and certainly not inconsistent with *Almanza*—for the court of appeals to have considered the circumstance that the jury was authorized to convict appellant of the lesser included offense of involuntary manslaughter, but chose not to, as some indication that lack of a negligent homicide instruction did not harm him at all. This is not to detract from the Court's holdings in *Mitchell,* et al., that where the jury's only options are to convict for the greater offense or acquit, the fact that a lesser included offense is raised by the evidence but not included in the jury instructions will be sufficient to demonstrate "some" harm. We simply hold that those cases do not fully control here.

*Saunders*, 913 S.W.2d at 571–72 (footnote omitted).

At first blush, this discussion seems to indicate the giving of any lesser included offense vitiates the failure to give an additional lesser included offense. However, reading further, the court stated:

> We agree with appellant that it is not invariably true that the jury's rejection of one lesser included offense will render harmless the trial court's failure to authorize the jury to convict of another lesser included offense also raised by the evidence.
>
> . . . .
>
> Failure to convict of one lesser included offense will not invariably render harmless any error in refusing to submit another lesser included offense that is also raised by the evidence. As with any purported errors in the jury charge, "harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any

other relevant information revealed by the record of the trial as a whole." *Almanza,* supra, at 171.

*Id.* at 572–74.

In this case, the mental states of intentionally, knowingly and recklessly were raised by the evidence. Under the charge given, while the jury could choose a lesser offense, aggravated assault, they could not choose the lesser mental state. Consequently they were faced with choosing the higher mental states, intentionally or knowingly, or acquitting Graham. This is the type of delimina the jury was faced with in *Beck,* 447 U.S. at 625, 100 S.Ct. at 2382, 65 L.Ed.2d at 392; *Mitchell,* 807 S.W.2d at 742; *Gibson,* 726 S.W.2d at 133; *Hayes,* 728 S.W.2d at 810; and *Moreno,* 702 S.W.2d at 641—whether to convict on the greater inclusive offense about which it harbors a reasonable doubt, or to acquit a defendant it does not believe to be wholly innocent. On the facts of this case, there is a "realistic probability" the jury could have found itself in this dilemma. That is to say, does the record in this case admit of a "realistic probability" that the jury's decision was reduced to whether Graham, through his use of the deadly weapon, intended to kill (attempted murder) or cause bodily injury (aggravated assault) or whether Graham was aware of, but consciously disregarded, a substantial and unjustifiable risk that bodily injury would occur? If so, then the failure to instruct the jury on reckless aggravated assault was harmful, notwithstanding the jury did not convict him of intentional or knowing aggravated assault. *See Saunders,* 913 S.W.2d at 570–74. Consequently, the trial court erred in not submitting the reckless commission of aggravated assault.

Finally, had reckless aggravated assault been given in the charge, the failure to submit reckless conduct to the jury would not have been error. For the only difference between reckless aggravated assault and reckless conduct [15] is that bodily injury occurs in the former and not in the latter. Since the issue of bodily injury was not controverted or the evidence about bodily injury was not subject to different interpretations,

there was *no* evidence from any source for the jury to rationally find Graham was guilty only of reckless conduct and not reckless aggravated assault.

The final result of my analysis is:

a) but for the "right ruling, wrong reason rule", points of error one and two should be, quickly and simply, sustained and the case reversed and remanded,

b) in any event, since there is some evidence in the record *that would permit a jury rationally to find* that if Graham is guilty, he is guilty only of reckless aggravated assault, point of error two should be sustained and the case reversed and remanded, and

c) since there is no evidence in the record *that would permit a jury rationally to find* that if Graham is guilty, he is guilty only of reckless conduct, the majority correctly overrules [16] point of error one, but the case should still be reversed and remanded under point of error two.

My analysis having failed to convince at least one other colleague, I am a respectful dissenter.

---

**15.** As both offenses were defined in the Penal Code at the time of the offense.

