**Fletcher E. BURNETT, Appellant,**

*v.*

**The STATE of Texas, Appellee.**

**No. 04–92–00175–CR.**

Court of Appeals of Texas, San Antonio.

Sept. 30, 1993.

⊕═309(6)

Penal Code § 6.03(a-d); §§ 1.07(a)(11)(A), 19.05(a)(1), 19.07(a) (1992).

---

Phillip Scott McClure, San Angelo, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before PEEPLES, GARCIA and ONION, JJ.

## OPINION

ONION, Justice.[1]

This appeal is taken from a conviction for murder. TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1989). After the jury found appellant guilty, it assessed his punishment at five years' imprisonment and recommended probation. The imposition of the sentence was suspended and appellant was placed on probation subject to certain conditions.

Appellant advances six points of error. In his first two points of error, appellant contends that the trial court erred in denying his request to submit to the jury the lesser included offenses of involuntary manslaughter and criminally negligent homicide. In this third and fourth points of error, appellant urges that if this court should find that appellant's trial counsel did not properly preserve error as to the failure of the court's charge to include the lesser included offenses, then he was deprived of his right to the effective assistance of counsel in violation of the federal and state constitutions. In the fifth and sixth points of error, appellant argues that if the error or errors in failing to charge on the lesser included offenses were not preserved, the errors were nevertheless fundamental errors which deprived him of a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). The State contends that the record sufficiently shows appellant's counsel timely requested the instructions on the lesser included offenses because the trial court an-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

nounced "on the record" it was denying the requested charges. We agree. Therefore, points of error three, four, five and six are rendered moot.

The sufficiency of the evidence to sustain the conviction is not challenged. In order to properly respond to the first two points of error, a review of the evidence is required.

In the early afternoon of June 27, 1989, Henry Earl Brown, age 23, was found lying face down in the front yard of appellant's home at 1502 Nolan Street in San Antonio. The police found that Brown had been shot in the back of his head. He was taken to a hospital where he died two days later.

Don Edward Lodge[2] testified he was riding his bicycle on Nolan Street about 12:30 p.m. on the day in question. Lodge saw an individual standing in front of the door at 1502 Nolan who appeared to be knocking or ringing a doorbell. Lodge then saw appellant come out of the house with a handgun, observed the other individual try to get off the porch, and saw appellant raise the pistol about shoulder height and fire one shot. Lodge related that the bullet struck the other individual in the head causing him to fall off the porch and onto the ground. Lodge proceeded to a Kentucky Fried Chicken Restaurant about a block away. There, he contacted San Antonio Police Officers Randy Jones and Willie Smith who went immediately to appellant's home. Upon his return, Lodge was able to identify the wounded man as a man he knew as "Peanut." Officer Jones recognized the victim as Brown, a male prostitute, who had been arrested several times for theft.

Jones looked through the screen door of the house and saw appellant sitting on a bed using the telephone. A gun was next to appellant who was calling 911. Appellant told the operator that he had just shot a burglar and wanted to call the police. Officer Jones recovered the weapon, a .380 caliber pistol, which he considered to be a deadly weapon. Appellant was taken into custody and handcuffed. Appellant told Jones that

the victim had been trying to break into appellant's house when the shot was fired. Appellant called Jones's attention to a hole in the screen door. Jones saw the hole, but could not tell when the hole was made.

Richard Stengel, a firearm expert, test-fired the .380 caliber semi-automatic pistol taken from appellant. He found that the bullet taken from Brown's brain during the autopsy had been fired by the weapon in question.

Dr. Suzanna Dana, a medical examiner, testified that the cause of Brown's death was a gunshot wound to the back of the head, and that the autopsy revealed the wound was located three inches down from the crown of the head and slightly to the left. The bullet was recovered. Dr. Dana testified that the records showed Brown had a blood-alcohol level of 0.10 when he arrived at the hospital, and agreed that Brown would have had a blood-alcohol level of 0.13 at the time of the shooting, which was above the level of legal intoxication.

Appellant testified that he lived in a dangerous neighborhood where there were many crack cocaine houses, his house had been burglarized several times, and he had purchased a gun and kept it under the pillow on his bed near the front door. On the day in question, appellant was sitting on his bed talking to his cousin, Murray Barber. The screen door was latched, but the solid door was unlocked. He heard a noise and told Barber someone was coming into the house. Appellant had never seen Brown before and he was scared when he saw Brown coming into the house holding a pencil, stick, pocketknife, "or something." Appellant thought Brown was a burglar and pulled out his pistol and shot Brown. He related that when Brown saw him with the pistol, Brown turned his head before the shot was fired.

Appellant then told Barber that he would have to call him back as someone was breaking into the house and appellant had to call the police. Barber confirmed the telephone

2. At the time of the 1992 trial, Lodge, age 21, was serving prison time for aggravated assault and the unauthorized use of a motor vehicle. At the time of the alleged offense, Lodge gave his name to the police as Don Edward Jones. He explained Lodge was his stepfather's name and Jones was his mother's name.

conversation and testified that at one point he heard a gunshot over the telephone.

Appellant admitted that he had test-fired his pistol and knew how to eject the shells. Appellant agreed that his pistol was a deadly weapon, that he had it under his pillow with the safety off and the pistol cocked so that all he had to do was pull the trigger after he pointed it at Brown. When asked if he pointed the gun knowing that he wanted to kill Brown, appellant answered "I suppose so," but he immediately recanted:

"No, no, I—I didn't intentionally point the gun to kill him." The record then reflects:

Q. When you pointed the gun and fired that round, did you want to just wound him?

A. I suppose so.

Q. So all you want (sic) to do was wound him but he wound up dying because of the bullet wound. Is that correct?

A. Yes.

\*    \*    \*    \*    \*    \*

A. . . . He was coming through the door at the time.

Q. Okay.

A. And I blowed him back out the door.

Q. Excuse me?

A. I blowed him back out the door.

Appellant testified that he had the gun "going straight at him" [deceased]; and once the deceased "spotted" the gun, he turned his head, but not his body, for "that is all he had a chance to do."[3]

At the conclusion of the guilt/innocence phase of the trial, the trial court charged the jury on the second count of the indictment[4] as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Fletcher E. Burnett, in Bexar County, Texas, on or about the 27th day of June, 1989, DID INTENDING TO CAUSE SERIOUS BODILY INJURY TO AN INDIVIDUAL, HENRY EARL BROWN, DID COMMIT AN ACT CLEARLY DANGEROUS TO HUMAN LIFE, to wit: SHOOTING THE SAID HENRY EARL BROWN WITH A FIRE-ARM, to wit: A HANDGUN, THEREBY CAUSING THE DEATH OF THE SAID HENRY EARL BROWN, you will find the defendant guilty of murder.

If you do not so believe, or if you have a reasonable doubt thereof, you will find defendant not guilty.

The trial court also gave a jury instruction on the defensive theory of defense or protection of property, but declined to give the requested charges on the lesser included offenses of involuntary manslaughter or criminally negligent homicide.

■ There is a two-pronged test for determining whether a jury must be charged on a lesser included offense. It has become known as the "*Royster*" or "*Royster–Aguilar*" test. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State*, 622 S.W.2d 442, 447 (Tex.Crim.App.1981). First, the lesser included offense must be included within the proof necessary to establish the offense charged.[5] Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *See Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990); *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988). Recently, the Court of Criminal Appeals has modified the second prong to read "second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993) (emphasis in original). "In applying the two-prong test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that

---

3. Appellant was not asked just how, if Brown was facing appellant as claimed, and Brown did not turn his body but only his head, the bullet struck Brown squarely in the back of the head.

4. The first count charged murder under TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1974). This count was not submitted to the jury.

5. *See* TEX.CODE CRIM PROC.ANN. art. 37.09 (Vernon 1981).

offense, *and not the greater offense.*" *Id.* at 673 (emphasis added). In adhering to the *Royster* test, the *Rousseau* Court rejected the federal standard but borrowed from it. The federal standard set forth in *Cordova v. Lynaugh,* 838 F.2d 764 (5th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988), provides that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense *and acquit him of the greater.*" *Cordova,* 838 F.2d at 767 (emphasis added). In *Rousseau,* the Court of Criminal Appeals noted that it was not the intent of the court to change the substantive test of *Royster,* but only to interpret and clarify existing law. *Rousseau,* 855 S.W.2d at 673 n. 4.

■ In determining whether the trial court erred in failing to give a charge on a lesser included offense, *all* of the evidence presented by the State and the defendant must be considered. *Havard v. State,* 800 S.W.2d 195, 217 (Tex.Crim.App.1989) (op. on reh'g); *Dowden v. State,* 758 S.W.2d 264, 269 (Tex.Crim.App.1988). Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Broussard v. State,* 642 S.W.2d 171, 173 (Tex.Crim.App.1982).

■ Both involuntary manslaughter and criminally negligent homicide are lesser included offenses of murder. *Dowden,* 758 S.W.2d at 270; *Thomas v. State,* 699 S.W.2d 845, 847 (Tex.Crim.App.1985); *DeLeon v. State,* 776 S.W.2d 750, 751 (Tex.App.—Corpus Christi 1989, no pet.). This alone is not enough. We must determine if the second prong of the *Royster* test has been met.

■ The distinction between murder, involuntary manslaughter and criminally negligent homicide lies in the culpable mental state accompanying the defendant's homicid-al act. "The difference between criminally negligent homicide and involuntary manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter." *Thomas,* 699 S.W.2d at 849.

In *Lugo v. State,* 667 S.W.2d 144, 147–48 (Tex.Crim.App.1984), the court stated:

The distinction between involuntary manslaughter and criminally negligent homicide is simply one of degree. *Salinas v. State,* 644 S.W.2d 744 (Tex.Crim.App. 1983). Involuntary manslaughter occurs when a person recklessly causes the death of another, V.T.C.A. Penal Code, Sec. 19.-05(a)(1); criminally negligent homicide occurs when a person causes the death of another by criminal negligence. V.T.C.A. Penal Code, Sec. 19.07. A person acts with "recklessness" when he or she "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur"; a person acts with "criminal negligence": when he or she "ought to be aware if a substantial and unjustifiable risk that the circumstances exist or the result will occur." V.T.C.A. Penal Code, Sec. 6.03(c) & (d). In *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975), we distinguished the two, as follows:

"Reckless conduct ... involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. Criminal negligence ... involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk."

■ Implicit in the statutory[6] definitions of these offenses is the idea that the

---

**6.** Section 19.07(a) of the Penal Code provides that "[a] person commits an offense if he causes the death of an individual by criminal negligence." Tex.Penal Code Ann § 19.07(a) (West 1989). Section 6.03(d) of the Penal Code defines criminal negligent conduct:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result

defendant must *not* have intended the resulting death, nor been aware that a death was reasonably certain to occur. Otherwise, the accused would have acted "intentionally" or "knowingly," not "recklessly" or with "criminal negligence." *See* TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). Therefore, in order for a defendant to be entitled to a jury charge on involuntary manslaughter or criminally negligent homicide, the record must contain "some" evidence that the defendant did not intend the resulting death or know that it was reasonably certain to occur. If such evidence is present, the record must then be examined to see if it indicates whether the defendant was *aware* or *unaware* of the risk that his conduct could result in the unintentional killing of the deceased. This much is necessary to determine if a defendant has met the second or "guilty only" prong of the *Royster* test.

In *Thomas*, the defendant requested an instruction on criminally negligent homicide based on his testimony that he did not intend to shoot the victim. The instruction was not given. On appeal, the Court of Criminal Appeals determined that his testimony did not show that he possessed the requisite culpable mental state so that if guilty, he was guilty only of criminally negligent homicide. It was reasoned:

> Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another indicates a person who is aware of a risk created by that conduct and disregards that risk.

*Thomas*, 699 S.W.2d at 850. Certainly, before a charge on criminally negligent homicide is required, the record must contain

of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care than an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN § 6.03(d) (Vernon 1974).

A person commits the offense of involuntary manslaughter if he recklessly causes the death of an individual. TEX.PENAL CODE ANN. § 19.05(a)(1) (West 1989). And section 6.03(c) of the Penal Code provides that:

evidence showing an unawareness of the risk. *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex. Crim.App.1986).

In the instant case, appellant had purchased the gun in question after burglaries had occurred at his home. He had test-fired the weapon and knew how the shells were ejected. He kept the loaded pistol under his bed pillow. The safety on the pistol was off and the hammer was back so that all he needed to do was to pull the trigger to fire the .380 caliber pistol when he heard and then saw the deceased coming into the house, he pointed the pistol, which he agreed was a deadly weapon, "straight" at the intruder and fired. Appellant testified he was scared, and that he "blowed him [the deceased] back out the door." Appellant denied that he intentionally pointed the pistol at the deceased "to kill him," but supposed that he just wanted to wound the intruder when he fired, and the intruder died.

▬▬ Criminal negligence means that the defendant should have been aware of the risk surrounding his conduct but failed to perceive it. *Dowden*, 758 S.W.2d at 270. There is no question that the actions of appellant were sufficient to indicate that he should have been aware of the substantial and unjustifiable risk that his conduct might injure and kill Brown. *See Still v. State*, 709 S.W.2d 658, 661 (Tex.Crim.App.1986). Whether appellant acted intentionally or unintentionally is not the distinguishing factor in determining if the homicide was criminal. Instead, the important issue is whether the act is voluntary or involuntary. *Dowden*, 758 S.W.2d at 270; *Ortiz v. State*, 651 S.W.2d 764, 766–67 (Tex.Crim.App.1983). The ac-

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN § 6.03(c) (Vernon 1974).

tions of appellant toward Brown were all voluntary, and under the circumstances, the evidence did not require a charge on criminally negligent homicide.

■ We must next inquire whether there was "some" evidence that appellant was guilty only of an involuntary killing. The gist of involuntary manslaughter is reckless conduct, not a knowing or intentional act. *Holmes v. State*, 830 S.W.2d 263, 266 (Tex.App.—Texarkana 1992, no pet.). A person need not intend both conduct and result in order to have the culpable mental state for a intentional killing. Conduct is not rendered involuntary simply because the defendant did not intend the result of his conduct. *Id.* at 266; *Ross v. State*, 763 S.W.2d 897, 901 (Tex.App.—Dallas 1988, pet. ref'd).

■ The evidence clearly established that appellant intended to shoot Brown with the pistol. Appellant was engaged in voluntary conduct. Any claim made after the fact that appellant did not intend to kill Brown raises an issue as to his culpable mental state only if it is taken alone and out of context. The statement loses its force within the context of the evidence as a whole. A defendant's statement that he did not intend to kill cannot be plucked out of the record and examined in a vacuum. *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App.1986). Appellant's statement does not fit within the context of the other facts concerning the offense. The evidence as a whole does not support a rational inference that appellant was consciously disregarding the risk of death that his conduct created. We cannot agree that the evidence was sufficient for a jury rationally to find appellant guilty only of involuntary manslaughter and not the greater offense. *See Rousseau*, 855 S.W.2d at 673.

In *Stewart v. State*, 587 S.W.2d 148 (Tex. Crim.App.1979), the court stated:

When we read appellant's testimony in light of Sec. 6.03(a), *supra*, we find no evidence that appellant acted in a reckless manner. Indeed, appellant testified that he shot the deceased in order to ward off the latter's attack. The trial court did not

err in refusing to submit a charge on involuntary manslaughter.

*Id.* at 151; *see also, Dowden*, 758 S.W.2d at 271; *Holmes*, 830 S.W.2d at 266.

In support of his first and second points of error, appellant relies upon *Saunders v. State*, 840 S.W.2d 390 (Tex.Crim.App.1992), a pre-*Rousseau* case. In *Saunders*, it was held that a defendant may be shown to be guilty of the lesser offense if the evidence presented is subject to "different interpretations." *Id.* at 392. In *Saunders*, the defendant was convicted of murdering a five-month old infant. The evidence showed that the cause of death was an epidural hemorrhage stemming from fractures to the skull that resulted when appellant squeezed the child's head with his hand. A doctor testified that little pressure was required to cause the fractures, and that no noise would accompany them. The court wrote:

Although other circumstances existed from which a jury could conclude appellant knew his treatment of [the child] might kill him, a jury could also conclude based on the same evidence that appellant may not have known his actions could kill the baby, even though he ought to have been aware of this risk. Under the latter interpretation, appellant could have been guilty only of the lesser offense of criminally negligent homicide. Because this evidence was subject to different interpretations and raised the issue that appellant was criminally negligent in squeezing the child's head, appellant's requested instruction on criminally negligent homicide should have been given.

*Id.* at 392.

■ The instant case differs from *Saunders* in at least one crucial respect. Appellant killed Brown with a firearm, a handgun, which is a deadly weapon *per se.* Tex.Penal Code Ann. § 1.07(a)(11)(A); *Thompson v. State*, 521 S.W.2d 621, 622 (Tex. Crim.App.1974). A specific intent to kill may be inferred from a defendant's use of a deadly weapon *per se.* *Moreno v. State*, 755 S.W.2d 866, 868 (Tex.Crim.App.1988); *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex.Crim. App.1984); *see also Godsey*, 719 S.W.2d at 580–81. Although the inference may be re-

butted, *see Foster v. State,* 639 S.W.2d 691, 695 (Tex.Crim.App.1982), there must be some evidence that a defendant is guilty only of reckless or negligent conduct before an instruction on the lesser included offense is required. *Mendieta,* 706 S.W.2d at 653.

We do not understand *Saunders* to hold that causing the death of another by the use of a deadly weapon *per se* is, in itself an ambiguous act subject to different interpretations regarding the defendant's culpable mental state. Under the circumstances given, more than speculation is required before the submission of an instruction on involuntary manslaughter or criminally negligent homicide is necessary. Points of error one and two are overruled.

The other points of error having been rendered moot, the judgment of conviction is affirmed.