TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00105-CR







Kenneth Raymond O'Brien, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT


NO. 583, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING








 Appellant Kenneth Raymond O'Brien appeals from his conviction for the offense
of murder. See Tex. Penal Code Ann. § 19.02 (West 1994). The jury assessed appellant's
punishment at imprisonment for life; there was an affirmative finding that appellant used a deadly
weapon in the commission of the offense.

 Appellant presents five points of error asserting that the evidence is factually
insufficient and that the trial court erred in failing to (1) grant a continuance, (2) conduct an
in-trial competency hearing, (3) charge the jury on the lesser included offense of manslaughter,
and (4) charge the jury on involuntary intoxication. We will affirm the trial court's judgment.

 In his fifth point of error, appellant insists that the evidence is factually insufficient
to support the jury's verdict. Appellant does not challenge the legal sufficiency of the evidence. 
In reviewing factual sufficiency of the evidence, we view all of the evidence without the prism of
"in the light most favorable to the prosecution," and we will set aside the jury's verdict only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375,
381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). "In performing a factual sufficiency
review, we are required to give deference to the jury's verdict, examine all of the evidence
impartially, and set aside the jury verdict 'only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust'." Cain v. State, 958 S.W.2d 404, 410 (Tex.
Crim. App. 1997) (quoting Clewis, 922 S.W.2d at 129).

 It was alleged and the jury found that appellant intentionally and knowingly caused
the death of David Cowe by shooting him with a handgun. The jury's verdict followed five days
of testimony. We will summarize all of the testimony. David Cowe was shot and killed on the
premises of a trailer park in Johnson City on September 24, 1995. At about 9:30 p.m., Cowe,
who was intoxicated, and Terri Lynn Henrie, both residents of the trailer park, were seated at a
concrete picnic table talking. Appellant, another resident of the trailer park, came over to the
table with a handgun under his belt and a knife in his possession; he took shotgun shells and
cartridges for several caliber weapons from his pockets and placed them on the table. Appellant
related to Henrie that he had taken some Quaaludes and that he needed to do some things before
they "kicked in." Appellant wanted to "roll a joint" but he did not have any cigarette papers. 
Cowe, at appellant's request, went to his trailer, returned with some cigarette papers, gave them
to appellant, and sat down at the table. Appellant then looked across the table at Cowe and said,
"Do you have AIDS, man?" Cowe replied, "No." Henrie testified that appellant then "just
pulled the gun out of his belt and just shot straight across the table. . . . It was very quick,. . .
by the time that he [Cowe] stopped saying no, he was shot." Cowe started to walk toward Henrie
and fell forward. Appellant said, "Are you hurt man?" Cowe did not reply. Appellant kept
Cowe, a small man, from falling to the ground. Henrie was frightened because she thought
appellant might shoot her. In an effort "to calm" appellant, Henrie testified she said "I think there
has been a terrible accident here, but I didn't see it happen." Appellant, with the gun in his hand,
started to drag Cowe toward appellant's Blazer. Henrie asked appellant to give her the gun, and
she accompanied or assisted appellant in getting Cowe to the Blazer. Appellant placed Cowe in
the Blazer and then drove from the trailer park; he testified he intended to take Cowe to the nearest
hospital.

 Cowe's mutilated body was found in a roadside park. The victim's hands had been
severed from his eviscerated body. An ax, which the State contended was used to mutilate Cowe's
body, was found at a different location partially buried near his Blazer when the officers arrested
appellant.

 Dr. Roberto J. Bayardo, Travis County Chief Medical Examiner, testified that he
performed an autopsy on the victim's body. Dr. Bayardo testified the victim's death was caused
by a gunshot in the chest. He found the "nose piece of the bullet" underneath the skin as well as
another fragment of the projectile. "There was a gunshot track into the chest that had gone
through his heart and lower portion of the left lung." The "bullet had fragmented in three pieces." 
The exit wound appeared "to have been someplace where. . . . there were post mortem injuries
that almost severed the body in two." A sample of the victim's blood tested positive for alcohol
in the amount of 0.23 percent and negative for other drugs. Dr. Bayardo testified that the "bullet
might have struck something, some other object that was between the gun and the victim causing
it to fragment." Dr. Bayardo found the bullet entrance was oblong and not round and theorized
and noted that if the bullet struck a beer can it would have made the bullet turn sideways. 

 Ronald Crumley, a Department of Public Safety firearm and tool mark examiner,
examined and test-fired the pistol which was shown to be the weapon fired by appellant. He also
examined the copper jacket of the bullet found in the victim's body. In Crumley's opinion the
bullet had been fired from appellant's pistol. While he was test-firing the weapon, it jammed
because a cartridge did not properly load into the chamber. Crumley testified that the malfunction
could have had any of a number of causes. It could have been caused by the pistol's extractor or
dirty chamber or because of defective ammunition. Crumley testified he would not have expected
the bullet to fragment unless it struck material harder than flesh. He found that the copper jacket
on "one side exhibited gouging, over marking. . . . like it had hit something." Crumley testified
that the marking of the bullet's copper jacket might be "consistent with the bullet striking the
cement." Crumley also testified that the gouging on the bullet may have been caused by an ax
while the bullet was in Cowe's body.

 Appellant testified in his own defense and offered extensive testimony of a
psychiatrist and a firearms examiner. The psychiatrist, Dr. Michael Arrambula, testified that
appellant at the time of the offense was "suffering from manic depression, specifically the manic
phase of the illness." Dr. Arrambula testified concerning appellant's manic depression illness,
appellant's prior medical treatment, and how appellant's illness related to this specific crime. Dr.
Arrambula concluded that "Mr. O'Brien's mania did not reach a level of severity that he did not
know that what he was doing was wrong." 

 Edward William Love, a firearms examiner for the Bexar County Crime
Laboratory, testified for the defense. Love testified that the copper jacketed lead projectile
recovered from the victim's body by the medical examiner came from a 7.62 by .25 caliber
cartridge made in China. The weapon in which the cartridge had been fired was a 7.62 Russian
Koperev pistol made in Czechoslovakia. Love, testifying about the copper jacket and a lead
fragment of the bullet stated that, "It [copper jacket] like the lead core that I examined has been
flattened and, of course, separated from the core and also has got some damage to it, scraping
where it hit a hard object." The "scrapings" on the bullet were consistent with having struck a
hard object. After seeing the photographs and reading Dr. Bayardo's report, Love thought the
bullet had yawed going sideways rather than straight to a point. Love did not believe the scrape
marks on the bullet jacket could have been made with an ax while the jacket was in Cowe's body
and he did not believe they could have been made when the bullet passed through a beer can.

 The fifty-two-year-old appellant testified he was an alcoholic but had not had a
drink of alcohol for fourteen years. He also testified he had been diagnosed as a "bipolar manic"
and he told of the medication he had taken. Before Cowe was shot, appellant testified that he had
unloaded his pistol, pointed it at the table, and pulled the trigger. He testified that the shooting
of Cowe was an accident. He also testified that he had asked, "You don't have AIDS do you
man?"because he was going to smoke pot with him. There was evidence suggesting that they 
smoked marihuana together earlier in the evening.

 In rebuttal, Blanco County Sheriff Bill Yung testified that on September 24th and
25th he inspected the concrete picnic table after Cowe was shot. He testified that as soon as the
officers saw what appeared to be a bullet hole in the bottom of a beer can, they inspected the entire
table for "any kind of mark that may have been made by any kind of hard object" and found none.

 Appellant argues that the witness Henrie "lied about everything from her name to
what she was doing at the time of the incident" and that she was not a credible witness. The jury
heard and was authorized by the jury charge to evaluate the credibility of all the witnesses. The
jurors were charged to acquit appellant if they believed, or had a reasonable doubt, that the
shooting of Cowe was accidental and was not a voluntary act of appellant. Although there was
testimony from which the jury might have concluded that Cowe's shooting was accidental, the
jury, properly instructed, rejected appellant's defense of accident.

 We have applied the standard of review required by Cain, Clewis, and Stone; after
examining all of the evidence impartially and giving deference to the jury's verdict, we conclude
that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong or unjust. We hold that the evidence is factually sufficient to support the jury's
verdict and overrule appellant's fifth point of error.

 In his first and second points of error, appellant asserts that the trial court erred in
refusing to grant a continuance or to grant a competency hearing after the trial commenced. The
State rested its case-in-chief on the fifth day of trial. On the sixth day of trial, appellant presented
the testimony of witnesses in his defense. On the morning of the seventh day of trial, before any
testimony was heard by the jury and before appellant had testified, appellant's counsel made an
oral motion for continuance urging that appellant was ill. Both of appellant's counsel testified in
support of the oral motion. Counsel testified that they had received information from a physician
that appellant was suffering from a urinary tract infection that produced a high fever and
headaches. The sheriff had informed counsel that appellant was taking a prescribed antibiotic. 
Counsel testified that in their opinion appellant generally lacked the ability to confer with counsel
in a sensible manner. They felt he would have difficulty making the rational decisions that he had
made up to that time during the trial. Further, counsel did not believe appellant was competent
to confer rationally with counsel to assist in his own defense. They contended that they could not
proceed with the trial because appellant could not confer with them with a rational degree of
understanding. Counsel had not discussed with appellant whether he was experiencing pain in his
urinary tract. No medical testimony was offered in support of the motion. The trial court
overruled the motion for a continuance and the motion to conduct a hearing on appellant's
competency. The court proceeded with the trial. Appellant testified at some length, but contends
that he was confused and contradicted himself. Penetrating cross-examination may have accounted
for inconsistency and self-contradiction in appellant's testimony. Prior to trial two psychiatrists
had examined appellant and found he was competent to stand trial.

 A motion for continuance must be in writing and must set forth the cause for
continuance. Tex. Code Crim. Proc. Ann. art. 29.03 (West 1989). All defense motions for
continuance must be sworn to by defendant himself. Id. art. 29.08. A motion for continuance not
in writing and not sworn will not preserve error for review. See Matamoros v. State, 901 S.W.2d
470, 478 (Tex. Crim. App. 1995); Montoya v. State, 810 S.W.2d 160, 176 (Tex. Crim. App.
1989). The "refusal to grant an oral motion for continuance, whether made before or after the
trial commenced, is not ground for reversal." Carpenter v. State, 473 S.W.2d 210, 213 (Tex.
Crim. App. 1971); see Hightower v. State, 629 S.W.2d 920, 926 (Tex. Crim. App. 1981); Minx
v. State, 615 S.W.2d 748, 749 (Tex. Crim. App. 1981); Vega v. State, 898 S.W.2d 359, 361
(Tex. App.--San Antonio 1995, pet. ref'd). Moreover, appellant has not furnished a record with
evidence in support of a motion for new trial showing the court abused its discretion in failing to
grant the motion for continuance. See Minx v. State, 615 S.W.2d at 750. Even if error is
preserved for review, a trial court's decision to refuse a continuance is reversible only for an abuse
of discretion. See Matamoros, 901 S.W.2d at 478; Smith v. State, 721 S.W.2d 844, 850 (Tex.
Crim. App. 1986). The trial court did not abuse its discretion in refusing to grant a continuance
and in refusing to grant a hearing on competency. Appellant's first and second points of error are
overruled.

 In his third point of error, appellant urges that the trial court erred in refusing to
submit to the jury his timely requested charge on the lesser included offense of manslaughter. The
trial court did charge the jury on the lesser included offense of criminally negligent homicide and 
accidental shooting. The test to determine whether a charge on a lesser included offense is
necessary has been stated to be: "[F]irst, the lesser included offense must be included within the
proof necessary to establish the offense charged, and second, some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only
of the lesser offense." Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). "In
applying this two-pronged test the trial court should make a determination as to whether the
evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant
is guilty only of that offense, and not the greater offense." Id.

 In determining whether the trial court erred in failing to charge the jury on the
lesser included offense of manslaughter, all of the evidence presented by the State and the
defendant must be considered. Penry v. State, 903 S.W.2d 715, 755 (Tex. Crim. App. 1995);
Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989). "It is not enough, . . . that the
jury may disbelieve crucial evidence pertaining to the greater offense." Bignall v. State, 887
S.W.2d 21, 24 (Tex. Crim. App. 1994). Instead "there must be some evidence directly germane
to a lesser . . . offense for the fact finder to consider before an instruction . . . is warranted." Id. 
Merely because a lesser offense is included within the proof of the greater offense, however, does
not necessarily warrant a jury charge on the lesser offense. See Jones v. State, 833 S.W.2d 118,
127 (Tex. Crim. App. 1992); Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).

 The differences between murder, manslaughter, and criminally negligent homicide
are the culpable mental states required for conviction. The culpable mental state required for a
murder conviction is intentional or knowing. See Tex. Penal Code Ann. § 19.02 (West 1994). 
The culpable mental state required for conviction of manslaughter is reckless. See id. § 19.04. 
The culpable mental state required for conviction of criminally negligent homicide is criminal
negligence. See id. § 19.05. Therefore, manslaughter and criminally negligent homicide are
lesser included offenses of murder. See Tex. Code Crim. Proc. Ann. art. 37.09(3) (West 1981). 
Reckless conduct as statutorily defined involves conscious risk creation, that is, the defendant is
aware of the risk surrounding his conduct or the result thereof, but consciously disregards that
risk. Tex. Penal Code Ann. § 6.03(c) (West 1994); Lewis v. State, 529 S.W.2d 550, 553 (Tex.
Crim. App. 1975). Criminal negligence as statutorily defined involves inattentive risk creation,
that is, the defendant ought to be aware of the risk surrounding his conduct or the result thereof. 
Id. § 6.03(d); Lewis, 529 S.W.2d at 553. At the heart of reckless conduct is conscious disregard
of the risk created by the defendant's conduct; the key to criminal negligence is found in the
failure of the defendant to perceive the risk. See id.; Burnett v. State, 865 S.W.2d 223, 227-30
(Tex. App.--San Antonio 1993, pet. ref'd). In a sense manslaughter and negligent homicide are
mutually exclusive, alternative lesser included offenses of murder. See Saunders v. State, 913
S.W.2d 564, 572-73 (Tex. Crim. App. 1995). However, in some cases the evidence relevant to
the culpable mental state may give rise to more than one inference. Id.

 Because manslaughter is a lesser included offense of murder, we must determine
from all of the evidence whether a jury could rationally have found that appellant, if guilty, was
guilty only of the offense of manslaughter and not guilty of the greater offense of murder. 
Appellant contends that appellant's testimony and that of Henrie raises the issue of reckless
conduct and manslaughter. Appellant testified that he emptied his gun by taking out the clip,
checking it, seeing how many bullets it had in it. "[I]t never should have had anything in it when
I took it out there, because there must have been a round in the magazine and it went off." Henrie
testified that immediately after the shot appellant seemed stunned. Appellant says this evidenced
that he was shocked and surprised by what had happened. Appellant argues that this evidence
indicates he was aware of the risk in handling the gun in the presence of other people. We believe
that the trial court's implied finding was correct that evidence the appellant cleared his gun and
showed shock and surprise when it fired indicated that appellant did not perceive the risk when
he fired the gun and therefore acted in a criminally negligent manner. This led the court to charge
on criminally negligent homicide and not manslaughter. The jury refused to find appellant acted
with criminal negligence and found appellant acted intentionally or knowingly and found appellant
guilty of murder. It is evident that the jury found credible Henrie's testimony that appellant "just
pulled the gun out of his belt and just shot straight across the table."

 We conclude that the evidence would not allow the jury to rationally find that
appellant was guilty only of the lesser included offense of manslaughter and not guilty of the
charged offense of murder. We hold that the evidence is both legally and factually sufficient to
allow the jury to rationally find appellant guilty of the charged offense of murder. 

 Moreover, if the facts in this case could be construed so as to have entitled appellant
to a charge on manslaughter, we conclude that the failure to submit such a charge was harmless
error. The charge submitted included the lesser included offense of criminally negligent homicide. 
This gave the jury an alternative to convicting appellant of the charged offense or acquitting him. 
"If the jury harbored a reasonable doubt as to defendant's guilt of the charged offense but at the
same time believed him guilty of some offense, it was not forced to choose between conviction and
acquittal, but had an option of convicting him of the lesser offense that was submitted." Jimenez
v. State, 953 S.W.2d 293, 298 (Tex. App.--Austin 1997, no pet.). "That it did not do so may
indicate that the failure to give the other lesser included offense instruction was harmless error." 
Id. The Court of Criminal Appeal's harmless error analysis in a similar case would support a
conclusion that if the trial court in this case erred in not submitting a manslaughter charge, it was
harmless error. See Saunders, 913 S.W.2d at 569-74. We hold that the trial court did not err in
refusing to submit the requested manslaughter charge. Appellant's third point of error is
overruled.

 In his fourth point of error, appellant complains that the trial court erred in refusing
to submit to the jury his requested charge on involuntary intoxication. At the guilt-innocence
phase of the trial, appellant asked the trial court to submit this charge:


Now, therefore, if you find and believe from the evidence beyond a reasonable
doubt that the defendant committed the offense of murder as alleged in the
indictment but you further find by a preponderance of the evidence, that at the time
of the conduct charged the defendant was intoxicated as that term is heretofore
defined and that (1) the accused has exercised no independent judgment or volition
in taking the intoxicant and (2) as a result of his intoxication the accused did not
know his conduct was wrong or was incapable of conforming his conduct to the
requirements of the law he allegedly violated, you will acquit the defendant and so
say by your verdict "Not Guilty."



Appellant did not request a charge on voluntary intoxication at the punishment phase of trial to
mitigate his punishment. See Tex. Penal Code Ann. § 8.04 (West 1994); Arnold v. State, 742
S.W.2d 10, 14 (Tex. Crim. App. 1987); Rodriguez v. State, 513 S.W.2d 594, 595 (Tex. Crim.
App. 1974).

 Involuntary intoxication may constitute an affirmative defense to the commission
of a criminal offense. See Torres v. State, 585 S.W.2d 746 (Tex. Crim. App. 1979); Shurbet v.
State, 652 S.W.2d 425, 427 (Tex. App.--Austin 1982, no pet.). The involuntary intoxication
defense is limited to (1) defendant's unawareness of what the intoxicating substance is, (2) force
or duress, or (3) prescribed drugs taken according to prescription. Id. at 428. Appellant argues
that on the day of the offense his use of marihuana, Quaaludes, and a prescribed antidepressant
medication Paxil, caused intoxication.

 Appellant argues that: "The jury should have been allowed to determine whether
or not this involuntary intoxication rose to the level of temporary insanity, thus making it
impossible for him to form an intentional act." The marihuana and Quaaludes used by appellant
were voluntarily, not involuntarily used. Appellant's expert witness testified that the
antidepressant Paxil might have "flipped" appellant into a manic state in which he would have had
a high level of energy and difficulty sleeping. There is no evidence that Paxil could or did cause
appellant to become intoxicated. There is no evidence that appellant's taking Paxil resulted in his
intoxication so that he did not know his conduct was wrong or that it caused him to be incapable
of conforming his conduct to the requirements of the law. In fact, appellant's expert witness
testified that, "Mr. O'Brien's mania did not reach a level of severity that he did not know that
what he was doing was wrong." The evidence did not raise the issue requiring the trial court to
submit the requested charge, and the trial court did not err in refusing to submit it. Appellant's
fourth point of error is overruled.


 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Aboussie, Kidd and Dally*

Affirmed

Filed: October 8, 1998

Do Not Publish


















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).



ntary intoxication. At the guilt-innocence
phase of the trial, appellant asked the trial court to submit this charge:


Now, therefore, if you find and believe from the evidence beyond a reasonable
doubt that the defendant committed the offense of murder as alleged in the
indictment but you further find by a preponderance of the evidence, that at the time
of the conduct charged the defendant wa