Deborah Rene TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–01–00187–CR.

Court of Appeals of Texas,
San Antonio.

May 8, 2002.

Rehearing Overruled May 30, 2002.

Michael C. Gross, Law Office of Michael C. Gross, San Antonio, for appellant.

Susan D. Reed, Criminal District Attorney, Scott Roberts, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: PHIL HARDBERGER, Chief Justice.

Deborah Rene Taylor ("Taylor") appeals her conviction for capital murder. In three points of error, Taylor argues: (1) the trial court erred in failing to suppress her written confession obtained pursuant to an illegal arrest in violation of the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure; and (2) the trial court erred in failing to instruct the jury as to felony murder. We affirm the trial court's judgment.

## FACTS & PROCEDURAL HISTORY

Taylor was convicted for the murder of Aurora Hernandez ("Hernandez"). Hernandez owned property located at 15878 Trawalter Road in Bexar County, Texas. Hernandez rented a portion of the property to David and Karen Kupp ("Kupp"). Karen Kupp's son, Glenn Wilson ("Wilson"), lived on the property along with his girlfriend, Taylor.

On April 30, 2000, Hernandez telephoned her son, Trinidad Hernandez ("Trinidad"), and told him she was going to the ranch. Trinidad never saw or heard from his mother again. Later that day, Kenneth Mann ("Mann"), who lived next to the rental property, saw Wilson and Taylor loading furniture onto Hernandez's white, 1989 Ford Ranger truck. Wilson and Taylor then got into the truck and drove off the property. Trinidad found his mother's body on the rental property early on the morning of May 1, 2000.

After discovering his mother's body, Trinidad contacted the Bexar County Sheriff's Department. Dalton Baker ("Baker"), an investigator with the Sheriff's Department, was dispatched to the scene of the crime. During the course of his investigation, Baker spoke with Trinidad, Kupp, and Mann. He also called James Wilson, the natural father of Glenn Wilson, who resided in Reading, Pennsylvania. After these interviews, Baker developed the following facts: (1) Hernandez had been shot to death with a .22 caliber weapon; (2) Wilson and Taylor were in possession of Hernandez's Ford Ranger and were enroute to the home of James Wilson in Pennsylvania; (3) Hernandez never let anyone else drive or borrow her truck; (4) Wilson and Taylor possibly were armed and dangerous—both Karen Kupp and James Wilson told Baker that their son would likely go down fighting rather than submit to any law enforcement.

Based upon these facts, Baker felt that he had probable cause to believe that theft of a motor vehicle and possibly a homicide had occurred. Baker then prepared a BOLO (being on the lookout for), which was transmitted from Bexar County to various law enforcement agencies, including the Pennsylvania State Police. The BOLO included a description of Wilson and Taylor and a description of the Ford Ranger, including the license plate number. The BOLO stated that the two suspects were possibly armed and dangerous and were headed to a particular address in Reading, Pennsylvania.

On May 2, Baker spoke with James Biever ("Biever") of the Pennsylvania State Police. During the conversation, Baker provided Biever with more details concerning the theft of the Ford Ranger and the possible homicide committed by Wilson and Taylor. Baker informed Biever that there was an outstanding arrest warrant in Texas for Taylor on the charge of misdemeanor assault. On May 3, Biever forwarded all of this information to Corporal Bruce Edwards ("Edwards") of the Pennsylvania State Police.

Shortly after Edwards received the information from Biever, Pennsylvania State Police near the Reading area were notified of a suspicious vehicle that was blocking the driveway on someone's property. The description of the vehicle and the license plate number matched that of Hernandez's Ford Ranger. Trooper Bruce Millhouse ("Millhouse") was sent to the location where the vehicle had been seen. Edwards had given Millhouse all the information regarding Wilson and Taylor, including their descriptions, the circumstances regarding the stolen vehicle, and the fact that Wilson and Taylor might be armed and dangerous. Upon arriving at the scene, Millhouse saw the Ford Ranger stuck in a ditch on the side of the road.

He also saw a male and a female walking down the road approximately 100 yards away from the truck. Millhouse drove by the couple to get a closer look, and realized they matched the description of Wilson and Taylor. Millhouse and several other troopers then converged on the couple, guns drawn, and identified themselves as Pennsylvania State Police. After asking them their identity, the male suspect identified himself as Glenn Wilson. The troopers handcuffed the suspects and took them into custody. Millhouse put the female in a marked police car where she identified herself as Deborah Taylor. Millhouse then placed Wilson and Taylor under arrest for possession of a stolen vehicle under Pennsylvania law. After the arrest, the outstanding Texas warrant for Taylor was faxed to the authorities in Pennsylvania.

Taylor was eventually extradited to Bexar County and indicted for the murder of Hernandez. After her extradition, Taylor gave a written statement to Deputy Sal Marin of the Bexar County Sheriff's Department, confessing to the murder of Hernandez. Prior to trial, Taylor filed a motion to suppress her confession because it was obtained pursuant to an illegal arrest. After a three day hearing, the trial court denied Taylor's motion. Taylor was convicted of capital murder and sentenced to life in prison.

## Discussion

### I. Legality of Taylor's Arrest

In her first two points of error, Taylor argues that the trial court reversibly erred in failing to suppress her confession obtained pursuant to her illegal arrest. In three subpoints, Taylor contends: (1) her out-of-state arrest was unlawful because it was based upon a void misdemeanor capias; (2) her out of state arrest was unlawful because it was not based upon a fugitive warrant or governor's warrant; and (3) her out-of-state arrest was unlawful because it was not based upon probable cause. Taylor does not challenge the confession itself. Her points of error focus on her arrest by Pennsylvania State Police.

■■■■ As an initial counter to Taylor's arguments regarding her arrest, the State contends that Taylor failed to preserve error because her trial counsel stated "no further objection" when the State admitted the evidence of Taylor's written confession. "It is well settled that when a pre-trial motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal." *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex.Crim. App.1986) (en banc); *Welch v. State*, 993 S.W.2d 690, 694 (Tex.App.-San Antonio 1999, no pet.). "However, when the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling." *Moraguez*, 701 S.W.2d at 904; *Welch*, 993 S.W.2d at 694.

Although stating "no objection" to the admission of previously complained of evidence does waive error, adding the word "further" changes this result. *See Welch*, 993 S.W.2d at 694. Stating "no *further* objections" impliedly references the pre-trial motion to suppress. While there are safer ways for defense counsel to avoid this challenge, we believe the error was properly preserved.

■■■■ We now decide whether Taylor's arrest in Pennsylvania was legal. Taylor's arguments regarding the illegality of the Texas misdemeanor capias and the lack of a governor's or fugitive warrant are contrary to the facts developed at the motion to suppress hearing. Both of these arguments hinge on Taylor's assertion that she

was arrested by Pennsylvania State Police because of her outstanding Texas warrant (capias) for misdemeanor assault. However, both Edwards and Millhouse testified that Taylor was arrested for possession of a stolen vehicle under Pennsylvania law. Although the Pennsylvania State Troopers were aware of the outstanding Texas warrant (capias), they did not arrest Taylor solely because of it. Our analysis shifts to whether the Pennsylvania State Police had probable cause to arrest Taylor for possession of a stolen vehicle under Pennsylvania law.

Under Pennsylvania law, a law enforcement officer may arrest without a warrant for any felony theft offense. 18 PA.C.S.A. § 3904. It is an offense to intentionally possess the property of another knowing it has been stolen. *Id.* § 3925. Any theft offense involving a vehicle is a third degree felony. *Id.* § 3903(a.1); *Commonwealth v. Holzlein,* 706 A.2d 848, 852 (Pa.Super.Ct.1997).

■ "The test for determining the existence of probable cause for a warrantless arrest is whether at that moment the facts and circumstances within the officer's knowledge and of which he had sufficient trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Johnson v. State,* 32 S.W.3d 294, 298 (Tex.App.-San Antonio 2000, pet. ref'd). "Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *State v. Parson,* 988 S.W.2d 264, 267 (Tex.App.-San Antonio 1998, no pet.). "To determine whether probable cause exists, we must look to the totality of the circumstances." *Johnson,* 32 S.W.3d at 298. "[W]hen there has been some cooperation between law

enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest is to be considered in determining whether there was sufficient probable cause therefor." *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1982) (en banc).

■ Whether the State had probable cause to arrest is a question we review under a *de novo* standard. *Parson,* 988 S.W.2d at 267. It is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Id.* "[A]n appellate court should give deference to the trial court's determination of facts as revealed in the testimony at trial, but review whether, considering those facts, the law was properly applied." *Id.*

Prior to arresting Wilson and Taylor, Millhouse knew the following: (1) their physical description; (2) information that they were possibly armed and dangerous; (3) information that Taylor and Wilson were on route to the Reading, Pennsylvania area; (4) a description of the Ford Ranger, its license plate number, and the fact that it was listed as stolen and possibly involved in a homicide. Millhouse learned this information from the BOLO and from Edwards. The source of all this information comes from the investigation by Baker of the Bexar County Sheriff's Department.

Based on the totality of the circumstances, Millhouse had probable cause to arrest Taylor for possession of stolen vehicle under Pennsylvania law. *See Johnson,* 32 S.W.3d at 298. The truck he saw on the side of the road matched the description. The license plate number had already been identified as that of Hernandez's Ford Ranger. The male and female he saw walking away from the truck matched the description of Wilson and Taylor. Millhouse knew the truck was

stolen, and that Wilson and Taylor were possibly involved in a homicide. He also knew that they might be armed and dangerous. Once he confronted the couple and Wilson positively identified himself, Millhouse knew he had the right people. Based on the information provided by Baker resulting from his investigation, Millhouse had sufficient probable cause to arrest Taylor without a warrant under Pennsylvania law. *See Woodward,* 668 S.W.2d at 344. We overrule Taylor's first and second points of error.

## II. Felony Murder

■ In her third point of error, Taylor argues that the trial court reversibly erred in failing to instruct the jury as to felony murder. Taylor asserts that she raised the issue as to whether she accidentally shot Hernandez in the course of committing an aggravated robbery. She contends that there was evidence presented that would permit a jury to rationally find that she had the intent to commit the robbery but not to cause the death of Hernandez.

The Penal Code sets forth the offense of felony murder:

A person commits an offense if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PEN.CODE ANN. § 19.02(b)(3) (Vernon 1994).

■ To establish a defendant's entitlement to an instruction on felony murder, the defendant "must establish that felony murder is a lesser included offense of capital murder and that there was evidence that if guilty of an offense, appellant was guilty only of felony murder." *Fuentes v.*

*State,* 991 S.W.2d 267, 272 (Tex.Crim.App. 1999). The second prong of the test requires some evidence that would permit the jury to rationally find the defendant guilty of only the lesser included offense. *Burnett v. State,* 865 S.W.2d 223, 227 (Tex. App.-San Antonio 1993, pet. ref'd). The entire record must be examined in determining whether a defendant was entitled to a lesser included offense instruction, and facts must not be isolated and taken out of context. *Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Crim.App.1993) (en banc). "In determining whether the trial court erred in failing to give a charge on a lesser included offense, all of the evidence presented by the State and the defendant must be considered." *Burnett,* 865 S.W.2d at 228. " Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts." *Id.*

In its brief, the State concedes that felony murder is a lesser included offense of capital murder. We must decide whether, considering all the evidence, a jury could rationally find Taylor guilty of only felony murder. *See id.* at 227. Taylor points to her written confession as evidence allowing her to be found guilty of only felony murder.

In the written confession admitted by the State, Taylor stated that she only pointed the gun in the general direction of Hernandez and did not intend to shoot her. She stated that the gun unexpectedly went off and shot Hernandez. She further explained that she then ran off and left Hernandez alive in the woods. Viewing this evidence in isolation does provide some evidence that would allow a jury to rationally find Taylor guilty of only felony murder. However, we must look at the entire record in making our determination. *See id.* at 228.

The undisputed evidence at trial established that Hernandez had been shot

twice by a .22 caliber weapon. One gunshot wound was to her upper back, and the other wound was to her head, just above her ear canal. The medical examiner testified that the shot to the head killed Hernandez instantly. This evidence contradicts Taylor's assertion that she shot Hernandez accidently, and that she left her injured, but alive. Further evidence also contradicts her claim. Trooper Barry Whitmoyer ("Whitmoyer") of the Pennsylvania State Police testified at trial. After Taylor had been arrested, he was assigned to watch her for a short period of time. During this time, Taylor made several statements to him. Whitmoyer testified that Taylor said the first shot was an accident, but that Hernandez was laying on the ground moaning and groaning. According to Whitmoyer, Taylor then stated that "she walked over to her and saw her moaning and felt that she was in pain, so she put her out of her misery."

Looking at the evidence as a whole, we believe a jury could not rationally find Taylor guilty of only felony murder. *See id.* at 227. Her assertion that she accidently shot Hernandez during the course of a robbery is in direct conflict with other evidence presented at trial. It is completely irrational that Taylor shot Hernandez accidently twice, once to the back, and once to the head. The head shot was fatal, meaning that Taylor could not have left Hernandez alive as she claims. The trial court did not err by not charging the jury as to felony murder. We overrule Taylor's third point of error.

### CONCLUSION

The judgment of the trial court is affirmed.