In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-407 CR


____________________



LYNNESHA COLLINS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 04-02-01440-CR






 MEMORANDUM OPINION 


 A jury found Lynnesha Collins guilty of committing aggravated assault with a deadly
weapon. Collins asks this Court to find that the trial court erred in not allowing the jury to
consider whether she was guilty of less serious offenses such as deadly conduct or assault.
We affirm.

 After finding Collins guilty of aggravated assault with a deadly weapon, the jury
assessed her punishment at ten years imprisonment along with a $5000 fine. See Tex. Pen.
Code Ann. § 22.02(a)(2) (Vernon Supp. 2005). The jury also recommended that Collins's
sentence and fine be suspended and that she be placed on community supervision for ten
years. The trial court sentenced Collins in accordance with the jury's recommendation. On
appeal, Collins brings four issues challenging the jury charge.

Background


 Certain facts are undisputed. Taking her young daughter with her, Collins drove to
Willis to visit her boyfriend, Jessie Hollins. Shortly after Collins arrived at his residence, she
and Hollins argued. Collins left in her car. She drove several blocks down the street where
Hollins lived before running a stop sign at the Campbell Road intersection. Collins was
driving approximately thirty to thirty-five miles an hour when her vehicle collided with the
vehicle driven by T.L. T.L. suffered significant injuries. (1) 

 Hollins testified at trial and was one of the State's primary witnesses. However, 
Collins disputed much of his testimony. Hollins testified that Collins became upset after
their argument and drove off in her car. The car's tires squealed as she left. Collins returned
in approximately ten minutes, came inside, and then decided to leave again. Hollins said he
walked outside with her and told her she needed to drive more carefully. According to
Hollins, Collins responded with an obscenity, told him that she would drive as fast as she
wanted to drive, and instructed him not to tell her what to do. Hollins said he saw Collins
run three stop signs and at the third, he saw her brake lights come on as the wreck occurred. 
He estimated she was traveling at fifty-five to sixty miles per hour before the brake lights
came on. Hollins further stated that Collins did not go through the third stop sign completely
as "she was trying to brake and stop the car." 

 Collins testified at trial. She stated that after her argument with Hollins, she strapped
her daughter in the car seat and drove off. According to Collins, Hollins did not come out
of the house while she was driving off. She stopped at the first stop sign and remained
stopped for at least thirty seconds and thought about Hollins. At the second stop sign, she
remained stopped for at least one minute and cried. Collins testified that as she drove toward
the next intersection (Campbell Road), she was in her "own world." She stated that when
she noticed the stop sign, she "looked up and . . . the accident had happened." She further
said: " So I did see it, but it was too late when I saw it." Collins testified that she was
looking straight ahead and was aware that there was a stop sign at the intersection beyond
Campbell Road and was concentrating on that stop sign further down the road. By the time
she realized there was a stop sign at the Campbell Road intersection, "the accident was
happening." According to Collins, she was driving a normal speed, thirty to thirty-five miles
per hour at the time of the accident. Collins's testimony on her speed was supported by an
accident-reconstruction expert. 

 Thus, Collins's testimony differs from Hollins's in several respects. Collins
maintained that she left Hollins's residence only once and that they did not discuss her
driving; Hollins said she left once, came back, argued with him about her driving, and then
left a second time. Collins testified that Hollins was not outside to observe how she drove
her car; Hollins said Collins left him standing in the front yard while she drove away at fifty
to sixty miles an hour. Collins stated that she ran only one stop sign; Hollins testified that
she ran three stop signs. 

 The indictment charged Collins with aggravated assault with a deadly weapon and 
alleged that she "intentionally, knowingly, and recklessly cause[d] bodily injury to T.L., by
driving and operating a motor vehicle and failing to control speed of said vehicle, failing to
stop at a stop sign, failing to yield the right of way to oncoming traffic and causing the
vehicle [Collins] was operating to collide with another motor vehicle driven by T.L." The
indictment further alleged that Collins "used and exhibited a deadly weapon, to-wit: a motor
vehicle, which in the manner of its use or intended use is capable of causing death or serious
bodily injury." 

 The jury charge allowed conviction of the alleged offense if the jury found beyond a
reasonable doubt that Collins either "intentionally, knowingly, or recklessly cause[d] bodily
injury to T.L., by driving and operating a motor vehicle and failing to control speed of said
vehicle, failing to stop at a stop sign, failing to yield the right of way to oncoming traffic and
causing the vehicle [Collins] was operating to collide with another motor vehicle driven by
T.L." The jury charge further defined "recklessly" as follows:

 A person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result will
occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's
standpoint. 


The jury charge did not require the jury to separately determine that the motor vehicle was
a deadly weapon. 

 In her first two issues, Collins asserts that the trial court erred in refusing her request
for jury charge instructions on the lesser-included offenses of deadly conduct (issue one) and
assault causing bodily injury (issue two). When determining whether a defendant is entitled
to a lesser included offense instruction, courts apply the two-prong Aguilar/Rousseau test. 
Hall v. State, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005)(referring to Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985) and Rousseau v. State, 855 S.W.2d 666, 672 (Tex.
Crim. App. 1993)). This test requires: (1) that the lesser offense must actually be a
lesser-included offense of the charged offense as defined by article 37.09 (2) and (2) that the
record must contain some evidence permitting a rational jury to find that the defendant is
guilty only of the lesser-included offense. Hall, 158 S.W.3d at 473. "In other words, there
must be some evidence from which a rational jury could acquit the defendant of the greater
offense while convicting him of the lesser-included offense. The evidence must establish the
lesser-included offense as a valid rational alternative to the charged offense." Feldman v.
State, 71 S.W.3d 738, 750-51 (Tex. Crim. App. 2002)(citations omitted). However, in
determining whether the trial court should have given the lesser-included offense charge, we
do not require the supporting evidence to be credible, uncontroverted, or consistent with
other evidence. Hall, 158 S.W.3d at 473. 

 In issue one, Collins argues the trial court erred in denying her request for a charge
on deadly conduct. As the State concedes that deadly conduct is a lesser-included offense
of aggravated assault with a deadly weapon, we need review only the second part of the
Aguilar/Rousseau test to determine whether the record contains some evidence that would
permit a rational jury to acquit Collins of aggravated assault with a deadly weapon while
convicting her of deadly conduct. See id.

 The Texas Penal Code defines "aggravated assault with a deadly weapon." One way
that offense occurs is when a person "intentionally, knowingly, or recklessly" causes bodily
injury to another while using or exhibiting a deadly weapon during commission of the
assault. See Tex. Pen. Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2005). 
Further, "deadly weapon" is defined as "(A) a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything
that in the manner of its use or intended use is capable of causing death or serious bodily
injury." Id. at § 1.07 (a)(17). 

 A person acts recklessly, or is reckless, (3) with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. The risk must be of such a nature
and degree that its disregard constitutes a gross deviation from the standard of
care that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint. 


Tex. Pen. Code Ann. § 6.03(c) (Vernon 2003).

 We also look to the Penal Code for the definition of "deadly conduct," the lesser
included charge sought by Collins. "Deadly conduct" occurs when a person recklessly
engages "in conduct that places another in imminent danger of serious bodily injury." Id. at
§ 22.05(a). 

 Collins maintains that certain evidence entitles her to a "deadly conduct" charge. She
directs us to her own testimony about running only one stop sign. Further, Collins says the
investigating officer's testimony supports her contention. The officer stated that running a
stop sign was reckless, but that she had never charged anyone with aggravated assault with
a deadly weapon for running a stop sign, except in Collins's case. Collins also argues that
because the charge instructed the jury on the conduct-oriented definition of "recklessly," the
jury could rationally conclude that Collins, if guilty, was guilty only of deadly conduct. 

 The State argues that there is no evidence that Collins did not recklessly injure T.L.
and no evidence that Collins did not use a deadly weapon to do so. The State notes that
Collins: (1) admitted running the stop sign; (2) estimated she was driving thirty to thirty-five
miles per hour; (3) admitted to not having a driver's license; and (4) agreed she failed to keep
a proper lookout. The State contends that a rational jury could not have found that Collins's
conduct was reckless - as required for a finding of deadly conduct - but that Collins did not
recklessly injure T.L. 

 Several of our sister courts support the State's contention and have interpreted Penal
Code section 22.05 (Deadly Conduct) to cover only dangerous acts that cause no physical
harm to the complainant. See Walker v. State, 994 S.W.2d 199, 203 (Tex. App.--Houston
[1st Dist.] 1999, pet. ref'd); Ramirez v. State, 976 S.W.2d 219, 227 (Tex. App.--El Paso
1998, pet. ref'd); Mares v. State, 903 S.W.2d 419, 422 (Tex. App.--Eastland 1995, pet. 
ref'd). (4) In Garcia v. State, 92 S.W.3d 574 (Tex. App.--Austin 2002, no pet.), the appellant
was convicted of aggravated assault with a deadly weapon. 92 S.W.3d at 575. The Austin
Court explained that a jury could not have rationally found appellant guilty only of deadly
conduct because the appellant "could not have placed the complainants in imminent danger
of serious bodily injury without using his truck in a manner capable of causing serious bodily
injury, that is, as a deadly weapon. Given the undisputed evidence that the complainants
suffered bodily injuries, the jury could not have rationally found that appellant was guilty
only of deadly conduct." Id. at 576. As it is undisputed here that T.L. was seriously injured
as a result of the collision, we find that Collins was not entitled to a deadly conduct charge. 
Issue one is overruled.

 In issue two, Collins asserts the trial court erred in refusing her request to include a
simple assault charge along with the aggravated assault with a deadly weapon charge. A
person commits assault if she intentionally, knowingly, or recklessly causes bodily injury to
another. See Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp. 2005). An assault becomes
aggravated if the actor either "causes serious bodily injury to another" or "uses or exhibits
a deadly weapon during the commission of the assault." Id. at § 22.02(a)(1)-(2).

 As the State also concedes that assault can be a lesser-included offense of aggravated
assault with a deadly weapon, here we need only review the second part of the
Aguilar/Rousseau test. Thus, we must determine whether the record contains some evidence
that would permit a rational jury to acquit Collins of aggravated assault with a deadly weapon
while convicting her of assault. See Hall, 158 S.W.3d at 473. Stated differently, is there any
evidence that Collins did not use or exhibit a deadly weapon?

 Collins argues that the record contains evidence that her automobile was not a deadly
weapon in the manner of its use. She contends that she was driving only thirty to thirty-five
miles per hour, that such a speed was not excessive, and that she ran only one stop sign.
Collins further argues that T.L.'s failure to wear a seatbelt increased the severity of her
injuries. Collins concludes that the trial court's refusal to include an assault charge "is
equivalent to declaring that every time someone runs a stop-sign and another person is
injured, the person running the stop sign has committed aggravated assault with a deadly
weapon."

 The Penal Code includes as a deadly weapon "anything that in the manner of its use
or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2005). This provision does not require a defendant to
actually intend to cause death or serious bodily injury; rather, an object is a deadly weapon
if a defendant intends a use of the object in which it would be capable of causing death or
serious bodily injury. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Thus,
the State was required to prove only that Collins's actual use or intended use of the object
was capable of causing death or serious bodily injury. Johnston v. State, 150 S.W.3d 630,
637-38 (Tex. App.--Austin 2004, no pet.)(citing Garcia v. State, 92 S.W.3d 574, 575-76
(Tex. App.--Austin 2002, no pet.)). Here, Collins's actual use of her motor vehicle caused
T.L. to suffer serious bodily injury. Therefore, her motor vehicle was, "by definition,"
capable of causing serious bodily injury. Compare Tyra v. State, 897 S.W.2d 796, 798 (Tex.
Crim. App. 1995)(finding a motor vehicle actually used to cause death to be a deadly weapon
because a weapon that "actually causes death is, by definition, 'capable of causing death'").
Under our statutory scheme, we find there is no evidence that would rationally support a
finding that Collins assaulted T.L. but did not use a thing, in this case a car, that caused a
serious bodily injury. Issue two is overruled. 

 In issue three, Collins asserts the trial court committed fundamental error by
submitting a jury charge authorizing conviction of aggravated assault with a deadly weapon
upon facts that would only support a conviction for simple assault. Collins contends that the
charge's application paragraph incorrectly instructed the jury to find simple assault rather
than aggravated assault because the charge failed to require a finding that the automobile was
a deadly weapon.

 However, a special charge issue for an affirmative deadly weapon finding was not
required in this case. Generally, an affirmative deadly weapon finding may take any of the
following forms: (1) the indictment includes an allegation of a "deadly weapon," and the
verdict states the defendant is guilty as charged in the indictment; (2) the indictment does not
allege "deadly weapon," but does allege a weapon that is per se a deadly weapon, and the
verdict states the defendant is guilty as charged in the indictment; or (3) the jury has
affirmatively answered a special charge issue on "deadly weapon" use or exhibition. See
Lafleur v. State, 106 S.W.3d 91, 95 (Tex. Crim. App. 2003); Polk v. State, 693 S.W.2d 391,
396 (Tex. Crim. App.1985). The first form was used here; the indictment alleged that Collins
"used and exhibited a deadly weapon, to-wit: a motor vehicle, which in the manner of its use
or intended use is capable of causing death or serious bodily injury," and the jury found
Collins guilty of the offense of aggravated assault with a deadly weapon "as charged in the
indictment." Thus, the verdict constituted an affirmative finding that Collins used or
exhibited a deadly weapon in commission of the offense and a special charge issue on
whether the automobile was a deadly weapon was not required.

 Further, the charge's application paragraph instructed the jury to remember certain
instructions. Among the instructions was one stating that a "person commits an offense if
the person intentionally, knowingly, or recklessly causes bodily injury to another, and the
person uses or exhibits a deadly weapon during the commission of the offense." For the jury
to have convicted Collins only on facts supporting simple assault, the jury would have had
to ignore that instruction. Issue three is overruled.

 In issue four, Collins contends the trial court committed fundamental error by failing
to limit its instruction on the definition of "recklessly" to her conduct's result, but also
acknowledges that her attorney failed to object to the charge's definition. 

 The charge provided that "a person acts recklessly, or is reckless, with respect to
circumstances surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result will occur." Collins
says that the charge as submitted allowed the jury to convict her for engaging in reckless
behavior (a conduct-oriented charge) rather than recklessly injuring the complainant (a result-oriented charge). 

 The State does not contest that the trial court erred by defining recklessness in terms
of circumstances of the conduct. Rather, the State maintains that Collins was not egregiously
harmed because the application paragraph properly limited the definition of recklessness. 

 We review jury charge error according to the standards set forth in Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984)(op. on reh'g). Scheanette v. State, 144 S.W.3d
503, 507 (Tex. Crim. App. 2004). Under Almanza, an appellant who failed to object to a
flawed instruction must show that the error, if any, was so egregious that she did not receive
a fair and impartial trial. Almanza, 686 S.W.2d at 171. Further, if an appellant alleges that
harm resulted from including "improper conduct elements in the definitions of culpable
mental states," we review the charge's application paragraphs and consider whether they
placed any limitations on those definitions. Hughes v. State, 897 S.W.2d 285, 296 (Tex.
Crim. App. 1994)(citing Cook v. State, 884 S.W.2d 485, 492 n.6 (Tex. Crim. App.1994)). 

 Here, the trial court properly limited the definition of recklessness in the application
paragraph. The application paragraph provided that the jury was to find Collins guilty only
if she "intentionally, knowingly, or recklessly cause[d] bodily injury to [T.L.] . . . ." Thus,
although the jury was informed that recklessness can also occur with regard to circumstances
of conduct, the jury was instructed that it could only find Collins guilty if she was reckless
with respect to the result of her conduct. The trial court's failure to limit the definition of
recklessness in one portion of the charge when it is properly limited elsewhere does not rise
to the level of egregious error. See Hughes, 897 S.W.2d at 296. Issue four is overruled. 

 In summary, the pertinent statutes allow for a criminal conviction in auto accidents
when the driver is reckless, and when a serious bodily injury is the result of reckless driving. 
Although we might choose to define the offense differently were we legislators, we apply the
law as it has been passed by the elected representatives of Texas.

 Accordingly, we affirm the trial court's judgment. 

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on June 8, 2005

Opinion Delivered November 16, 2005

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. According to T.L.'s physician, T.L. sustained injuries in the accident that have caused
her to have paraplegia (a weakness of the lower extremeties with loss of sensation as well as
pain). As a result, T.L. has little or no movement of her feet and limited movement of her
thighs and upper legs. Further, she is confined to a wheelchair most of the time and suffers
from loss of bladder control.
2. Article 37.09 provides that an offense is a lesser included offense if:


 (1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged; 

 (2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public interest
suffices to establish its commission;

 (3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or

 (4) it consists of an attempt to commit the offense charged or an
otherwise included offense.


 Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).


 

 
3. As the State maintains on appeal that Collins "recklessly" injured T.L., we consider
only that culpable mental state.
4. We recognized these holdings in Graham v. State, 950 S.W.2d 724,731 n.2 (Tex.
App.--Beaumont 1997, withdrawn, 976 S.W.2d 913 (Tex. App.--Beaumont Oct. 15, 1998)). 
However, the Fourteenth Court recently has determined that deadly conduct may be a lesser
included offense of aggravated assault even though the victim was seriously injured. See 
Ford v. State, 38 S.W.3d 836 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd); Ortiz v.
State, 144 S.W.3d 225, 233 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd).